HORACE G. ATWOOD (afterwards by amendment JENNIE L. ATWOOD) *vs.* CALEDONIAN AMERICAN INSURANCE COMPANY OF NEW YORK.

Suffolk.   January 14, 1910. — May 19, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Insurance,* Fire.   *Waiver.   Estoppel.*

A policy of fire insurance upon household furniture and other personal property in a certain dwelling house contained a condition that no extraordinary alterations, additions and repairs should be made upon the house containing the property insured without the consent of the company indorsed on the policy.   The house and its contents were destroyed by fire after the insured had made extensive changes upon the house without the consent of the insurance company being indorsed on the policy.   In an action by the insured on the policy, the defendant set up the defense that the policy had been avoided by the violation of the condition.   The plaintiff contended that the condition had been waived.   It appeared, that, after the plaintiff had kept the policy for about fourteen months

he delivered it to the agent of the defendant for the purpose of having it rewritten, that the agent kept the policy until after the house and the insured property had been destroyed by fire, although at some time before the fire the plaintiff had demanded its return to him, and that, while the policy was in the possession of the agent, the plaintiff sent a letter to the agent, who had power to grant permits for additions to and changes of buildings and to indorse on the policy the consent of the defendant, informing him of the plaintiff's intention to build an extension to the house containing the insured property, and asking him, if the notice was not satisfactory, to let the writer hear from him at once, but giving no definite information of the extent of the proposed additions or changes or of the time when the work was to begin, nor any estimate of the time required for its performance. *Held*, that there had been no waiver, and that the insurance company was not estopped from setting up the defense of the violation of the condition.

A fire insurance company has the right to assume that the terms of a policy issued by it, which has been in the hands of the insured and which he afterwards has surrendered to an agent of the company to be rewritten, are known to the insured, and, if the agent wrongfully has retained the policy in his hands after having been requested by the insured to return it, this does not excuse the insured from ascertaining the contents of the policy by a request for a copy or otherwise.

Where a policy of fire insurance contains a condition that no extraordinary alterations, additions and repairs shall be made upon the premises insured or containing the property insured without the consent of the insurance company indorsed upon the policy, it is the duty of the insured in case such extraordinary alterations are made not only to obtain the consent of the company but to see that it is indorsed upon the policy.

CONTRACT upon a policy of insurance against fire in the Massachusetts standard form, dated April 2, 1904, covering household furniture and other personal property contained in a dwelling house, numbered 73 on Clark Street in Everett, which was destroyed by fire on January 24, 1907.

In the Superior Court the case was referred to Herbert C. Joyner, Esquire, as auditor, who filed a report, and, after a recommittal of the case to him, filed a second report. Later the case was tried before *Crosby*, J., the only evidence that was introduced being the auditor's second report and the policy of insurance sued upon. The material facts which appeared by the auditor's report are stated in the opinion, where also is stated the material condition contained in the policy. The judge ruled that on all the evidence the plaintiff could not recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. M. Browne*, (*J. T. Maguire* with him,) for the plaintiff.
*F. W. Brown*, (*W. L. Came* with him,) for the defendant.

HAMMOND, J.   One of the express conditions of the policy was that no extraordinary alterations, additions and repairs should be made in and upon the premises containing the property insured "without the consent of this company indorsed on this policy"; and one of the grounds of the defense is that before the loss this condition had been violated and the policy thereby avoided.   It is not disputed by the plaintiff that such changes were made without such indorsement; and the defense, if now open to the defendant, would seem to be complete.   But the plaintiff says that by reason of the conduct of the defendant and its agents this defense is not now open to the defendant; that, while there is no evidence of waiver of this condition, still the defendant is estopped to set up this defense.   The only question upon this branch of the case is whether under the facts found by the auditor the plaintiff's claim of estoppel is tenable.

The facts bearing upon this question may be summarized as follows : The policy, being for the term of five years, was dated April 2, 1904, and was delivered about that time by William E. Davenport and Son, the local agents of the defendant, to the husband, and by him to the plaintiff.   The premium was paid by Davenport and Son to the defendant in May, 1904, and was charged by them in their personal accounts to the plaintiff's husband.   The plaintiff kept the policy until July 24, 1905, when with her consent it was sent by her husband to the agents to be rewritten, and with the expectation on her part that when rewritten it would be immediately returned to her at her residence. In what way it was to be rewritten was in dispute.   It never was in fact rewritten and never was returned to the plaintiff. Her husband demanded the policy for the plaintiff, but the agents refused to return it, saying that the plaintiff's husband owed them the premium.   The agents left the policy with an attorney at law to collect the premium and other alleged indebtedness from the plaintiff's husband to the agents, "which said agents claimed was due them, but which indebtedness was denied by the plaintiff's husband."   No collection ever was made, and in May, 1906, the policy was returned by the attorney to the agents "some time prior to the fire," and at the date of the fire it was in their possession.   "It was delivered within one week thereafter to the attorney of the defendant company, in whose

possession it remained until after it was exhibited to " the auditor at the first hearing before him. On March 28, 1907, a written demand for the policy was made upon the defendant by the plaintiff's attorneys, in which demand the correct number of the policy was given, but it was described as issued to the plaintiff's husband.

The auditor finds that in April, 1906, the plaintiff's husband sent to the agents a letter reading substantially as follows:

" Gentlemen: My wife intends to build an extension on the house 73 Clark Street, Everett, Mass., and as the insurance on both the house and the furniture (I don't know whether I put furniture or not) were placed through you, this is to notify you of same, and if this notice is not satisfactory, kindly let me hear from you at once, and oblige, Yours truly, H. G. Atwood."

As to this letter the auditor's report proceeds as follows: " From the relationship, and the mutual interest of the parties, husband and wife, the auditor finds that the plaintiff knew and approved of the sending of this letter, and that as no answer was received to the letter, she believed that she might make alterations and extraordinary repairs without affecting the insurance. The letter was posted in Boston, where the office of the agents is situated, and from the presumption and the circumstances, the auditor finds that the letter came to the office of the agents. No answer was made to it, and no indorsement in writing of a mechanic's permit was made on the policy. At the time the letter was written, the policy was in the hands of the lawyer, Spaulding, but it was within the control of said agents. During the summer and fall of 1906, the plaintiff made extensive alterations and extraordinary repairs on her house containing the insured property, without any written or other permit from the defendant or its agents."

The agents " had a written commission from the defendant giving them the ordinary authority of local insurance agents for foreign companies, to write policies of insurance subject to the rules and regulations of the company. This authority included making indorsements of mechanics' permits, so called, authorizing alterations and extraordinary repairs upon insured property, or buildings containing such property. Such permits

could be granted for three months without extra charge, and extended beyond said time for an extra charge of five cents on $100 insurance per month."

More briefly stated the facts found by the auditor are that the policy, about the time of its date, was delivered to the plaintiff, by whom it was kept for about fourteen months, when, for the purpose of being rewritten, it was returned to the agents and was kept by them until after the fire, although at some time before the fire the plaintiff had demanded it. At what particular time the demand was made does not appear. The plaintiff bases her contention as to estoppel largely upon the fact that the defendant's agents kept the policy and did not answer her husband's letter.

When and under what circumstances an insurer is estopped to rely upon a breach of condition of the contract as a defense is a question upon which there is much confusion among the authorities, and it would serve no useful purpose to discuss them at length. It is sufficient to say that our attention has been called to no case, nor are we aware of any, where the principle has been applied to circumstances similar to those appearing in this case. It is argued by the defendant that the letter in question never reached the defendant's agents. But upon the facts found by the auditor we think that that was a question for the jury.

The letter, however, was exceedingly vague and indefinite. It not only failed to describe the policy correctly, but even described it incorrectly. As a matter of fact the furniture only was insured. It gave no definite information of the extent of the proposed addition or changes or of the time when the work was to begin, nor any estimate of the time required for its performance. The policy had been in the hands of the plaintiff, and the agents had the right to assume that the plaintiff knew its terms. Indeed had the policy still remained in the hands of the plaintiff she would have been held to know its terms. *Parker* v. *Middlesex Mutual Assur. Co.* 179 Mass. 528. Nor do we think that the fact that the agents had wrongfully held on to the policy excused her from ascertaining what its contents were. It does not appear that she could not have obtained a copy, nor indeed does it appear that she ever intimated to the

agents that she did not know the contents or that she desired the policy in order to ascertain what should be done for her security in case of repairs. It is to be noted, also, that the plaintiff had reason to suppose that there was some question as to the binding force of the policy.

The only power the agents had in the matter was to grant permits and to indorse upon the policy the consent of the company. It was not only' the duty of the insured to get a permit, but to see that the consent of the defendant to the changes proposed was indorsed upon the policy. The rule that it should be so indorsed was a reasonable rule, and the plaintiff had consented to it. *Kyte* v. *Commercial Union Assur. Co.* 144 Mass. 43. When the agents received the letter (if indeed they received it at all) they had the right to assume that the plaintiff knew the condition of the policy. It was the duty of the plaintiff to see that the condition was complied with. Even the verbal consent of the agents would not have been sufficient.

In *Worcester Bank* v. *Hartford Fire Ins. Co.* 11 Cush. 265, the policy provided that if the assured, after the issuance of the policy, should procure additional insurance upon the same property and should not with all reasonable diligence give notice thereof to the insurer and have the same indorsed upon the policy or otherwise acknowledged by the insurer in writing, the policy should cease and be of no further effect. The assured procured several other policies and showed them to the defendant's agent, who failed to make the proper entry in writing although he took them for that purpose and although he gave the assured to understand that he had made it. It was held that the condition had not been complied with and the policy was avoided. That case was stronger for the plaintiff than this.

We are of opinion that under the circumstances of this case as found by the auditor the defendant is not estopped from setting up the violation of the condition in defense, and that the policy was thereby avoided. It becomes unnecessary to consider the other grounds of defense. The verdict for the defendant was rightly ordered. For authorities bearing upon the general question see among others, *Putnam Tool Co.* v. *Fitchburg Mutual Fire Ins. Co.* 145 Mass. 265, 269 ; *Porter* v.

*United States Life Ins. Co.* 160 Mass. 183; *Parker* v. *Rochester German Ins. Co.* 162 Mass. 479; *Hill* v. *Commercial Union Assur. Co.* 164 Mass. 406; *Paul* v. *Fidelity & Casualty Co.* 186 Mass. 413; *Northern Assur. Co.* v. *Grand View Building Association*, 183 U. S. 308; *Cleaver* v. *Traders' Ins. Co.* 65 Mich. 527; *S. C.* 71 Mich. 414; *Henschel* v. *Oregon Fire & Marine Ins. Co.* 4 Wash. 476; *Pelkington* v. *National Ins. Co.* 55 Mo. 172.

*Exceptions overruled.*