IRA J. CASS vs. WILLIAM G. LORD & another.
SAME vs. AMERICAN CENTRAL INSURANCE COMPANY.

Worcester.    September 27, 1920. — November 22, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Contract*, What constitutes, Of insurance. *Agency*, Liability of agent in contract. *Insurance*, Fire, Agent's liability.

An automobile dealer cannot maintain an action of contract against an insurance agent for breach of an oral agreement to procure and deliver to the plaintiff a valid policy of insurance against fire upon automobiles from time to time owned by the plaintiff in his business, or to insure such automobiles as the plaintiff might from time to time own and have on hand in connection with his business as an "automobile dealer," or to procure and deliver to the plaintiff a valid policy of insurance upon automobiles from time to time owned by the plaintiff in his business and, pending the issuance of such a policy, himself "to insure such automobiles," where, on the plaintiff's own uncontradicted and uncontrolled statements and admissions, it appears that he knew that the defendant was a general agent and dealt with him as such, and that he did not expect the agent to insure the cars himself but relied on such contract as the agent was to get for him from the insurance company, and it also appears that the agent procured from an insurance company and delivered to the plaintiff and the plaintiff accepted a policy binding the parties according to its terms.

Where an agent acts within the scope of his authority for a disclosed principal, he does not bind himself unless it appears that he expressly agreed to become personally responsible.

An automobile dealer is bound by the provisions of a policy of insurance against loss by fire of his automobile although he neither read the policy nor an accompanying rider nor knew "a single condition in" it, if he voluntarily accepted it and kept it in his safe until a loss by fire occurred.

In a policy of insurance against loss by fire issued to an automobile dealer and providing that it should "attach and cover upon automobiles, bodies, chassis, tops or other equipment while attached to and a part of automobiles owned by the assured and held by him for sale, from time of delivery to the assured, and to continue until said property is delivered to the purchaser or until same otherwise passes out of the possession of the assured . . . this period in no event to exceed twelve months or to extend beyond the termination" of the policy, the words, "automobiles owned by the assured and held by him for sale" are not ambiguous; and, at the trial of an action upon the policy, evidence of nego-

tiations and conversations preceding the issuing of the policy or following its issuance and before a fire within its terms, which tend to modify or vary its terms, is not admissible.

The policy above described also contained a provision that "no officer, agent or other representative of this Company shall have power to waive any provision or condition of this Policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this Policy exist or be claimed by the insured unless so written or attached;" and it was *held*, that the effect of a provision of the policy could not be overcome by invoking the aid of the doctrine of waiver and estoppel based on interviews of the assured with agents of the insurance company after he had received and had accepted the policy.

The rider attached to and made a part of the policy above described contained a provision that "All risks attaching hereunder are to be reported to this Company as soon as known to the assured but no risk to be binding unless so reported and accepted, and for which a certificate is issued, signed by a duly authorized agent of the Company. This certificate is hereby made a part of this Policy." A further provision of the rider was that "It is understood and agreed that intentional failure to so report any such risk as soon as known to the assured shall render this entire contract null and void." At the trial of an action upon the policy for the loss of nineteen automobiles of the plaintiff damaged by fire, it appeared that, as to thirteen of the automobiles, the plaintiff had not reported to the company acquisition of ownership and possession "as soon as known" to him, and that such failure had not arisen from unavoidable mistake or excusable inadvertence on his part. *Held*, that under the provisions of the policy the plaintiff could not maintain the action.

Two ACTIONS OF CONTRACT brought by a dealer in automobiles for the loss by fire of nineteen automobiles, the first action being against a firm of insurance brokers, and the second action being against an insurance company upon a policy of insurance. Writs dated August 14, 1917.

In the Superior Court the actions were tried together before *N. P. Brown*, J. The material evidence is described in the opinion. At the close of the evidence, at the request of the defendants, the judge in each case ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*H. F. Knight*, for the plaintiff.

*J. A. Stiles*, for the defendants Lord.

*W. L. Came*, for the defendant insurance company.

BRALEY, J. The question in the first case is whether there was any evidence which entitles the plaintiff to go to the jury. It is alleged in substance that the defendants verbally agreed to procure and deliver a valid policy of insurance against fire upon automobiles from time to time owned by the plaintiff in his busi-

ness, or to insure such automobiles as the plaintiff might from time to time own and have on hand in connection with his business as an "automobile dealer," or to procure and deliver to the plaintiff a valid policy of insurance upon automobiles from time to time owned by the plaintiff in his business, and in the meantime "to insure such automobiles themselves." A valid oral contract for fire insurance binding the company before the issuance of a policy undoubtedly can be entered into as pointed out in the recent cases of *McQuaid* v. *Aetna Ins. Co.* 226 Mass. 281, and *Mowles* v. *Boston Ins. Co.* 226 Mass. 426, and an insurance agent can bind himself by parol to procure insurance, and if there is a breach of the contract he is liable in damages. *Sargent* v. *National Fire Ins. Co.* 86 N. Y. 626. *Everett* v. *O'Leary*, 90 Minn. 154. But to be valid and enforceable the contract must be mutually binding and supported by a consideration. The defendants having procured and delivered a policy binding the parties according to its terms, the plaintiff is forced to take the position, that, independently of their principal, the defendants also agreed to become personally liable as indemnitors, and, acting solely for themselves, to insure his property. *Hewins* v. *London Assurance Corp.* 184 Mass. 177, 182, 183. *Stone* v. *Old Colony Street Railway*, 212 Mass. 459, 464, 465. His own uncontradicted and uncontrolled statements and admissions of his contractual relations with the defendants and on which he must rely are, "I knew that they were general insurance agents and dealt with them as such. . . . I did not expect they were going to insure my car themselves. . . . I relied on some contract they was to get for me from the insurance company." It also appears that all premiums were paid to them as general agents of the company. It is general law that where an agent, as in the case at bar, acts within the scope of his authority for a disclosed principal, he does not bind himself unless it appears that he expressly agreed to become personally responsible. *Simonds* v. *Heard*, 23 Pick. 120. *Goodenough* v. *Thayer*, 132 Mass. 152. *Davis* v. *Cress*, 214 Mass. 379. The plaintiff having failed to introduce evidence from which a finding would have been warranted that the defendants bound themselves individually, the judge correctly ruled that he could not recover.

The second question is whether the action on the policy can

be maintained. The contract consists of the policy and of the rider or "slip," "Dealer's Form — Automobile," dated November 24, 1915, and apparently attached to the policy on December 15, 1915, the time when it was dated, countersigned and presumably delivered. It is of no consequence that the plaintiff did not read the policy or the accompanying rider, or "know a single condition in" it, but accepted and kept it in his safe until the fire. He is bound by the contract into which he voluntarily entered. *Secoulsky* v. *Oceanic Steam Navigation Co.* 223 Mass. 465, 466. The fifteenth clause of the rider declares that the agreements and stipulations contained in this form cancel and replace anything to the contrary printed in the policy, and accordingly under clause five the policy is "to attach and cover upon automobiles, bodies, chassis, tops or other equipment while attached to and a part of automobiles owned by the assured and held by him for sale, from time of delivery to the assured, and to continue until said property is delivered to the purchaser or until same otherwise passes out of the possession of the assured, . . . this period in no event to exceed twelve months or to extend beyond the termination" of the policy.

The plaintiff contends that the words "automobiles owned by the assured and held by him for sale" are ambiguous and open to explanation, and that the understanding of the parties as to the character of the property actually covered or to be covered should have been passed upon by the jury. We perceive no ambiguity. The words are to receive their ordinary meaning; nor can the automobiles be classified thereunder as comprising "new cars, second hand cars, and junk cars," some of which it was mutually understood the plaintiff did not intend to insure. *Hatch* v. *United States Casualty Co.* 197 Mass. 101, 104. *Follins* v. *Dill*, 229 Mass. 321. The preliminary conversations between the plaintiff and the general agents before he ordered the policy, and conversations after it issued and before the fire, as well as conversations following the fire were also rightly excluded. The policy is a complete instrument. It cannot be varied or modified by prior negotiations as narrated by the plaintiff, *Odiorne* v. *New England Mutual Marine Ins. Co.* 101 Mass. 551, 553; *De Friest* v. *Bradley*, 192 Mass. 346, 352, or overcome by invoking the aid of the doctrines of waiver and estoppel based on his interviews at any time

with the company's agents after he received and accepted the policy. It is expressly stipulated that, "no officer, agent or other representative of this Company shall have power to waive any provision or condition of this Policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this Policy exist or be claimed by the insured unless so written or attached." *Batchelder* v. *Queen Ins. Co.* 135 Mass. 449. *Harris* v. *North American Ins. Co.* 190 Mass. 361, 368. *Urbaniak* v. *Fireman's Ins. Co.* 227 Mass. 132, 134.

We now come to the terms of the contract as shown by the policy and the rider. The policy is a "running policy," under which upon the record the specific property to be insured is to be ascertained subsequent to December 15, 1915. *Hartshorn* v. *Shoe & Leather Dealers' Ins. Co.* 15 Gray, 240. And from that date to the time of the fire the plaintiff received and sold about one hundred and nine automobiles of which about fifty were reported for insurance during the years 1916 and 1917. By clause six of the rider, "All risks attaching hereunder are to be reported to this Company as soon as known to the assured but no risk to be binding unless so reported and accepted, and for which a certificate is issued, signed by a duly authorized agent of the Company. This certificate is hereby made a part of this Policy. . . ." The company never having prepared nor provided a form of certificate, the judge correctly held that the lists of automobiles the plaintiff gave to the general agents, who approved them, the jury might find were a form of certificate which had been recognized by the company as sufficient. The "risks" nevertheless "attaching hereunder" were automobiles "owned by the assured and held by him for sale" during the period between the time when he acquired title and the date when he made delivery to a purchaser, or ceased to have them in his possession. While the delay varied, ranging from fifteen days to seventeen weeks, the plaintiff admitted that of the nineteen automobiles damaged by the fire at least thirteen had not been reported "as soon as known" to him. The language of the rider previously quoted is to be read with the fifth clause. It embraces all automobiles whether kept in the plaintiff's storehouse or in his garage, and there being no evidence from which compliance with these precedent conditions could

have been found, there can be no recovery for damage to the thirteen or possibly fifteen automobiles. *Atwood* v. *Caledonian American Ins. Co.* 206 Mass. 96. It is unnecessary to decide whether the jury under suitable instructions could have found that either six or four of the nineteen had been duly reported, and certified. The plaintiff having offered no evidence that his failure to report the thirteen automobiles "as soon as known" arose from unavoidable mistake, or excusable inadvertence, and having acted voluntarily with full knowledge of the time when he acquired title to and possession of each automobile, is concluded by the unequivocal and further provision in clause six, that "It is understood and agreed that intentional failure to so report any such risk as soon as known to the assured shall render this entire contract null and void." *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8, 12, and cases cited. See *Kemp* v. *Hammond Hotels*, 226 Mass. 409, 416.

It follows that the exceptions in each case must be overruled, and it is

*So ordered.*