THOMAS J. BURKE & others *vs.* ATLANTIC CHEMICAL COMPANY.

Suffolk. November 29, 1921. — March 6, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Contract,* In writing, Construction. *Evidence,* Extrinsic affecting writing.

The owners of certain black gunpowder delivered it to a corporation in accordance with a proposal in writing made by him and accepted by the corporation that the corporation would recover the nitrate of potash the powder contained and sell it, and, when it was sold, would pay the owner eighteen cents per pound as his "allowance for the powder and divide the net profits of the shipments above said eighteen cents per pound allowance plus the actual expenses of

treatment, into two equal parts, one of which shall belong to" the corporation and the other to the owner. The *agreement continued:* "The net profits shall be ascertained by deducting from the gross receipts only said eighteen cents per pound plus the actual expenditures (not including any overhead charges) and these actual expenditures you agree shall not exceed one cent per pound for the powder treated; and in case the expenditure, exclusive of cost of equipment, should exceed that amount, you agree to assume any excess." The entire proceeds of the sale of the nitrate were not enough to pay the owner eighteen cents per pound. In an action by him against the corporation, it was *held,* that

(1) It was immaterial that the title to the powder may not have passed to the defendant, or that the defendant assumed that there would be enough money received from the sale of the nitrate to pay the plaintiff for the powder and to yield a profit to itself;

(2) The contract was clear and unambiguous;

(3) The promise to pay the plaintiff eighteen cents per pound for the powder when the nitrate was sold was absolute;

(4) Evidence that an officer of the defendant had stated to the plaintiff that when the nitrate of potash was sold, the defendant would pay the plaintiff eighteen cents for each pound of powder delivered to the defendant, was inadmissible.

CONTRACT. Writ dated December 7, 1918.

The contract which was the basis of the action was evidenced by two letters, one from the plaintiffs to the defendant which was dated Boston, August 18, 1917, and read as follows:

"Referring to our conversation and correspondence, we make you the following proposal relative to the black gunpowder which we control, now stored in Picatinny Arsenal in New Jersey.

"There is about one hundred (100) tons of this powder standing in the name of Thomas J. Burke. We all have an equal interest in it. We are to deliver this powder to you in carload lots in its original containers, freight prepaid to Mansfield, Massachusetts. Upon its arrival at Mansfield you are to unload it and recover the nitrate of potash on your property at Mansfield. We have analyzed samples of this powder and find it contains an average better than seventy-five (75) per cent nitrate of potash.

"Upon recovering the nitrate of potash you are to market the same as promptly as possible. When the same is sold you are to pay us eighteen (18) cents per pound as our allowance for the powder and divide the net profits of the shipments above said eighteen (18) cents per pound allowance plus the actual expenses of treatment, into two equal parts, one of which shall belong to you and the other to us three. The net profits shall be ascertained by deducting from the gross receipts only said eighteen (18) cents

per pound plus the actual expenditures (not including any over-head charges) and these actual expenditures you agree shall not exceed one (1) cent per pound for the powder treated; and in case the expenditures, exclusive of cost of equipment, should exceed that amount, you agree to assume any excess.

"In case it should become necessary for you to incur expense in order to turn the nitrate of potash into refined nitrate of potash, owing to a small amount of organic matter or other foreign matter that may go into the solution, this expense shall be deducted from our share of the equal division of net profits. Our one-half of the net profits shall be paid to the three of us in equal shares.

"You are to secure all necessary permits from the Town of Mansfield, from the fire authorities, etc., and are to be solely responsible for any liability resulting from this powder after it reaches Mansfield; also to cover same with sufficient insurance, cost of same to be borne by us alone. Equipment to be furnished and to be owned by us.

"If the above terms are satisfactory your acknowledgment of this letter accepting the same will constitute a sufficient contract."

To the above letter the defendant replied on August 18, 1917, stating, "We accept the terms specified in this letter."

The action was tried before *Fosdick*, J. Material evidence and an exception to certain evidence are described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiffs alleged exceptions.

*H. R. Bygrave*, for the plaintiffs.

*J. M. Maloney*, for the defendant.

JENNEY, J. On August 18, 1917, the plaintiffs wrote to the defendant concerning some black gunpowder which was then controlled by them. In their letter they proposed to deliver the gunpowder to the defendant, which was to recover the nitrate of potash contained therein and then sell it. The letter continued: "When the same is sold you [the defendant] are to pay us [the plaintiffs] eighteen (18) cents per pound as our allowance for the powder and divide the net profits of the shipments above said eighteen (18) cents per pound allowance plus the actual expenses of treatment, into two equal parts, one of which shall belong to you and the other to us three. The net profits shall be ascertained by deducting from the gross receipts only said eighteen

(18) cents per pound plus the actual expenditures (not including any overhead charges) and these actual expenditures you agree shall not exceed one (1) cent per pound for the powder treated; and in case the expenditures, exclusive of cost of equipment, shall exceed that amount, you agree to assume any excess." The defendants by letter accepted the terms so specified.

The auditor found that the plaintiffs delivered one hundred and ninety-eight thousand seven hundred and ninety-five pounds of gunpowder to the defendant and that they fulfilled all the requirements of the contract. His report negatived the defendant's claim of misrepresentation on the part of the plaintiffs. The entire proceeds of the sale of the nitrate of potash extracted from the gunpowder amounted to $18,077.19. This was not enough to pay the plaintiffs for the powder. They argue that the agreement contained an unconditional promise to pay for the powder. The defendant contends that the contract should not be construed as in effect making it liable as a purchaser of the powder; but it is immaterial that the title to the powder may not have passed, or that the defendant assumed there would be enough money to pay the plaintiffs the value of the powder and also to yield a profit to itself. The contract is clear. The nitrate of potash was to be recovered and sold; the promise was absolute to pay to the plaintiffs when it was sold the sum agreed as the value of the powder. There is nothing to indicate that the amount payable was to be limited by the money actually received or that the obligation was to be discharged only by recourse to a fund created by the sale of the nitrate. The parties did not provide for such a contingency and no such term can be read into the contract.

The judge, subject to the plaintiffs' exception, ordered the jury to find a verdict for the defendant upon the pleadings and the evidence. This instruction was based upon an erroneous construction of the contract and this exception must be sustained.

One other question remains. One of the plaintiffs was called as a witness and was asked as to a conversation between him and officers of the defendant for the purpose of showing that the defendant's president expressly said that when the nitrate of potash was sold, the defendant would pay the plaintiff eighteen cents for each pound of powder delivered to the defendant. This question was properly excluded. The written contract disclosed by

the letters was unambiguous and the evidence was inadmissible to vary its terms or affect its construction. The exception to the rejection of this evidence must be overruled. *Waldstein* v. *Dooskin,* 220 Mass. 232. *Benford Mfg. Co.* v. *Standard Tire & Rubber Co.* 235 Mass. 380. *Cass* v. *Lord,* 236 Mass. 430.

*Exceptions sustained.*