Vincent **CIARAMITARO**, Plaintiff, Appellant,

v.

**GOUGH AND KING**, Inc., Defendant, Appellee.

No. 5287.

United States Court of Appeals
First Circuit.

Jan. 13, 1958.

I. Irving Kline, Gloucester, for appellant.

Joseph F. Dolan, Boston, Mass., with whom John J. Sullivan and Wilbur H. Hecht, New York City, were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This case is a backwash of an earlier appeal determined by this court. Vincent Ciaramitaro, plaintiff-appellant herein, domiciled in Massachusetts, was the owner of a fishing vessel named Eleanor, the home port of which was Gloucester, Mass. Through an insurance broker, the defendant Gough and King, Inc., a New York corporation, plaintiff procured from The Saskatchewan Government Insurance Office a marine insurance policy on the hull of the Eleanor in the sum of $30,000 for the period from October 22,

1953, to October 22, 1954. On the face of the policy was typed in the following: "Warranted Insured vessel engaged in day fishing only, out of Gloucester, Mass."

On or about three A.M. on July 3, 1954, the Eleanor set out from a pier at Gloucester to commence fishing for whiting, a type of fishing which is done only in daylight hours. After fishing all morning the vessel sank in the early afternoon from undetermined causes and was a total loss. The insurance company denied liability, claiming that the policy had been forfeited by breach of the aforesaid warranty in that, during the life of the policy and before the day the vessel was lost, the Eleanor, after fishing all day, would occasionally not put back to Gloucester, Mass., but would drop anchor within the shelter of another harbor, such as Provincetown or Rockport, nearer the area proposed to be fished the next day. Accordingly, the plaintiff had to bring suit against the insurance company. Plaintiff recovered a judgment in the district court, which this court affirmed in Saskatchewan Government Insurance Office v. Ciaramitaro, 1956, 234 F.2d 491. Thereafter the insurance company satisfied the said judgment by paying plaintiff the sum of $32,780, which included the principal amount of the policy of $30,000 for a total loss, together with $2,780 interest, plus costs.

Now the insured, having prevailed in that action against the insurance company, brings an action against the insurance broker who procured the marine insurance policy. The theory of the plaintiff's case is that the broker negligently failed to obtain the type of insurance policy requested by the plaintiff, and that upon the contrary it procured a policy which included an unwanted warranty, expressed in ambiguous terms, which practically invited a contest of liability by the insurance company, so that plaintiff is entitled to recover from the broker the amount of counsel fees and other expenses which plaintiff was obliged to incur in suing the insurance company, together with such sum as will

reimburse him for loss of earnings in the fishing business due to the inevitable delay in receiving payment for the loss of the Eleanor. It appears that plaintiff's negotiations for the procurement of the insurance policy were conducted with one Edmund O'Neil, who was manager of the defendant broker's office at New Bedford, Mass. Plaintiff's affidavit in opposition to the motion for summary judgment contained the following:

> "Mr. O'Neil and I agreed that the coverage was to be in the sum of $30,000.00 for total loss and that the vessel could fish within a 150 mile radius of Gloucester. It was also agreed between myself and Mr. O'Neil that this would be the only restriction. At no time was there any discussion with reference to day fishing warranty."

Mr. O'Neil's affidavit stated as follows:

> "The only clauses that I mentioned to Ciaramitaro were total loss only and warranted 150 miles area from Gloucester, Massachusetts. All this information was sent to Gough and King by me.
>
> "During my interview with Mr. Ciaramitaro, he stated that he wished to use this vessel for whiting fishing and I so relayed that information to Gough and King of New York City. I did not discuss any warranties regarding day fishing."

The action was originally filed in the Superior Court of Essex County, Massachusetts, and was removed to the United States District Court for the District of Massachusetts on grounds of diversity of citizenship. The district court permitted plaintiff to file an amended complaint, one count of which was based on a breach of contract between the insurance broker and the insurer, another count of which sounded in tort.

Defendant filed a motion for summary judgment under Rule 56, Fed.Rules Civ. Proc. 28 U.S.C.A., with an accompanying affidavit. Plaintiff filed two affidavits in opposition to the motion. After hearing, the district court granted defendant's motion and entered judgment dismissing the complaint, from which judgment the present appeal was taken.

It is not challenged that the question of liability in the case at bar depends upon the local law of Massachusetts, as declared in the state courts. The reasoning of the district court, in dismissing the complaint without the citation of authorities, may be gleaned from the following quotation:

> "The defendant alleges, and the plaintiff does not deny, that the policy was agreed upon in September of 1953; that a copy of the policy was delivered to the insured-plaintiff by May of 1954 and that the loss did not occur until July of 1954. On these facts it is apparent that the present plaintiff should be estopped from asserting that the policy was not in accord with the plaintiff's version of the agreement between the broker and the insured. The silent acquiescence in the terms of the policy as it was delivered effectively modified the oral agreement between the broker and the insured."

We gather from such cases as Cass v. Lord, 1920, 236 Mass. 430, 128 N.E. 716, and Long v. Agricultural Ins. Co., 1926, 257 Mass. 240, 153 N.E. 792, that the Massachusetts courts might well apply the severe doctrine as held by the district court, namely, that acceptance of the insurance policy by the plaintiff in May, 1954, without objection to its terms, or without asking for a reasonable time in which to examine it, and it may be without even reading the same, would preclude the insured from thereafter complaining to the broker that the insurance policy did not comport with the terms of the oral agreement between the insured and the broker.

However, we find it unnecessary to rely upon any such technical, and perhaps harsh, doctrine. Plaintiff has referred us to no case, in Massachusetts or elsewhere, sanctioning recovery against the insurance broker or agent, as in the case at bar, where the insurance policy procured by the agent in fact cov-

ers the loss in question in the amount requested in the application. It seems that even where the insurance agent obtained a policy which by negligence contains a term defeating the liability of an insurance company, the agent is liable to the insured only in the amount of the face value of the policy which he should have obtained. Ursini v. Goldman, 1934, 118 Conn. 554, 173 A. 789. See Note in 29 A.L.R.2d 171, 203 (1953). We do not see how the insurance broker or agent could be liable for any more, where, as here, the policy procured by the broker did in fact cover the loss in question and the insured has recovered in full from the insurance company. Of course, the insurance broker or agent cannot be taken to have guaranteed that the company will not make an unfounded resistance to a claim under the policy.

A judgment will be entered affirming the judgment of the District Court.