SEA FEVER CORPORATION,
Plaintiff
V.
HARTFORD FIRE INSURANCE
COMPANY, et al.,
Defendants

No. 78-2201-S

United States District Court
Commonwealth of Massachusetts

September 10, 1982

Leo F. Glynn, Esq., counsel for plaintiff. Bertram E. Snyder, Esq., counsel for Hartford Fire Ins. Co., The Hartford Ins. group.
Jacob J. Locke, Esq., counsel for Patterson, Wylde & Windeler, Inc.

## FINDINGS, RULINGS AND
## ORDER FOR JUDGMENT

Skinner, D.J. In this action the plaintiff, the owner of the F/V SEA FEVER, seeks to recover the proceeds of a policy of marine hull insurance issued by the defendant Hartford Fire Insurance Company ("Hartford"), or alternatively seeks damages against the insurer for misrepresentation and against the defendant Patterson Wilde & Windeler ("Patterson"), the insurance broker, for misrepresentation and negligence.

The president and sole stockholder of the plaintiff corporation is Robert Brown, an experienced fisherman who has owned and operated fishing vessels for over twenty years. During the period in question, he operated two fifty-foot wooden deep-sea lobster boats through separate corporations, the F/V SEA FEVER, the subject of this case, and the F/V SEA HOLLY. It was his practice to put both boats to work deep sea lobstering from April in each year to the end of December or early in the following January when he would take in his pots. Most winters he worked one boat or the other tub trawling on-shore between January and March. In the winter the boats were tied up in Harwichport, Massachusetts unless they were engaged in tub trawling from Marblehead.

All of the repair work on both boats was done at the Goudy and Stephens boatyard in East Boothbay, Maine. Each year prior to the start of the lobster season the boats would be taken to East Boothbay to be overhauled and made ready for the forthcoming season.

Up until May, 1977, both boats were covered by hull insurance policies issued by Insurance Company of North America ("INA"), each in the face amount of $100,000. Neither of the INA policies had lay-up warranties. A lay-up warranty is a provision in a marine insurance policy in which the owner warrants the vessel will not be operated during a certain period, typically during the winter when risks are high. Lay-up warranties are very common in yacht policies but are unusual in policies on commercial vessels. Inclusion of such a warranty is a factor taken into account in underwriting and usually has the effect of reducing the premium. The annual premium on the INA hull policy for the SEA FEVER was $4,200.

In 1977, Steven Smithwick was a "producer", or salesman, in the marine department of the defendant Patterson. He was familiar with Brown's boats and impressed with their well-maintained appearance. He was also familiar with

Brown's reputation as a careful seaman. He considered the SEA FEVER and SEA HOLLY to be favorable risks and, in the late winter of 1977, began actively to solicit Brown's business. All of his contracts with Brown were by phone between Smithwick's office in Boston and Brown's home in Deer Isle, Maine. The two men never met until the first day of trial in this case.

Brown responded to Smithwick's solicitation by describing his existing policy and inviting Smithwick to offer a bid for the same coverage. Neither man mentioned a lay-up warranty. Brown had never had a commercial policy with a lay-up provision in his twenty years as an operator of fishing vessels. Brown described the operation of his boats in general terms. He said that he sometimes used the boats for tub trawling in the winter, but had not used the SEA FEVER in 1977. Smithwick knew that the boats were annually taken to Goudy and Stevens for repairs prior to being outfitted for off-shore lobstering, but was under the impression that this occurred in April. In fact, the repair trips were made at various times between February and April in each year. Brown purposely did not tell Smithwick the amount of the INA premium so that Smithwick was making a blind bid.

One of the insurers, among several, with which Patterson placed marine insurance was the defendant Hartford. Smithwick decided to contact the Hartford underwriting department for a quotation on hull insurance for the SEA FEVER and the SEA HOLLY. In an effort to reduce the premium as much as possible in order to compete with the unknown INA premium, he suggested to the Hartford underwriters that they base their quotation on a policy containing a lay-up warranty for the period January 15 to March 15. Hartford's underwriter responded with a quotation on a policy containing such a warranty of an annual premium of $1,900 on each boat, with $100,000 face value. The premium would have been $300 more without the lay-up warranty.

Smithwick accordingly made a bid to Brown to furnish hull insurance for each boat for an annual premium of $1,900. He did not mention to Brown that the policies would contain lay-up warranties. Brown was pleased by the substantial saving in premiums. He authorized Smithwick to obtain the insurance. Brown did not know which insurer would write the policy, but relied on Smithwick to place the policies. Smithwick accordingly filed applications with Hartford for the hull insurance, specifying the lay-up period January 15 to March 15. Although it was usual to submit such applications to the insured for his signature, this was not done and Brown never saw the application. I find that in submitting these applications, Patterson, through Smithwick, was acting as an agent of Brown and the plaintiff corporation.

In due course a policy of hull insurance on the SEA FEVER was issued by Hartford and sent to Brown. The policy was on the standard "AHAB" form except that on the facing sheet there plainly appeared a notation that the vessel was warranted laid-up from January 15 to March 15. The policy was for one year beginning May 28, 1977. Brown paid the premium and gave the policy to his wife to file without reading it.

In August of 1977, the SEA FEVER was inspected by V. J. Readdy, a marine surveyor employed by Hartford. In December Readdy reported to the Hartford three minor deficiencies, including three cracked frames. Hartford reported these discrepancies to Patterson on January 18, 1978 with the suggestion that they be corrected promptly while the vessel was out of commission. Smithwick wrote Brown on February 13, 1978, enclosing Hartford's January 18th letter.

On February 17, SEA FEVER set sail from Harwichport for East Boothbay, Maine to be overhauled at Goudy & Stevens boatyard. This voyage was not the result of Hartford's January 18th letter but was for the purpose of carrying out routine repairs. Arrangement had

been made between Brown and Cummings, the manager of Goudy & Stevens, well in advance of Brown's receipt of Smithwick's letter of February 13.

, In the early morning of February 18, SEA FEVER collided with the F/V JOHN DAVID in the Gulf of Maine, and sank. Litigation in the District Court of Maine has established the helmsman of the SEA FEVER was at fault. The F/V JOHN DAVID towed, the SEA FEVER, now hull down and awash, towards Portland, Maine. Outside Portland it was picked up by a salvage tug and deposited on a mud bank in Portland harbor. Thereafter it was towed to East Boothbay and repaired by Goudy & Stevens at a cost of $130,000.

Brown, who was aboard SEA FEVER at the time of the collision, radioed to his wife, who contacted B. Devereux Barker, Jr., president of Patterson and notified him of the collision. Barker contacted the local underwriter for Hartford to obtain a payment guarantee for the salvage company. Hartford's underwriter authorized payment of salvage and towing charges and dispatched a marine surveyor to inspect the damage to the vessel.

On February 24, 1978, Hartford sent a letter to Patterson stating that coverage was doubtful and all further activity by Hartford was under a reservation of right. Hartford delayed making a formal declination of coverage because of urging by Barker to provide coverage notwithstanding the lay-up warranty, but did so by letter on April 13, 1978.

I find that Hartford's denial of coverage was made within a reasonable time and that it did not waive reliance on the lay-up warranty by paying for salvage and towing. I further find no evidence of negligence or misrepresentation on the part of Hartford. While Patterson was to some extent an agent for both insured and insurer, I find that Patterson's breaches of duty (discussed hereinafter) were made in its capacity as agent for the plaintiff insured and that Hartford is not responsible therefor, having issued precisely the policy requested of it.

I further find that if Brown had known of the lay-up warranty and had requested permission to make a nonfishing voyage for purposes of repair, permission would have been granted routinely upon payment of a small additional premium.

When the SEA FEVER reached Portland, Brown telephoned Barker, who informed him that the policy was subject to a lay-up warranty. Brown replied, "That means I'm in real trouble." I conclude that Brown understood the warranty to mean that the vessel was precluded from any type of navigation, not just from fishing.

### Rulings of Law

The parties agree that although with respect to the action on the insurance policy, this Court is exercising its maritime jurisdiction, the applicable law is the marine insurance law of Massachusetts, the place where the policy was made and the location of the home port of the subject vessel.

Under the law of Massachusetts, the insured is bound by the terms of the insurance contract whether he knows of them or not, and may not avoid them on the ground that he has not read them, as between himself and the insurer. **Urbramiak v. Fireman's Insurance Co.,** 227 Mass. 132 (1917); **Secoulsky v. Oceanic Stream Navigation Co.,** 223 Mass. 465 (1916). Fraud by the insurer creates an exception to the rule. When an agent of the insurer made false statements on the application, which became warranties under the policy, the insured was not bound even though she had not read the policy. **John Hancock v. Schwarzer,** 354 Mass. 327 (1968). I have found that Patterson was the plaintiff's agent at the time the application for insurance was prepared and presented by Patterson to Hartford. Accordingly, the exception does not apply. I rule that, with respect to Hartford the plaintiff is bound by the terms of the lay-up warranty and that the lay-up warranty requires the vessel to be tied up and out of commission

for all purposes of navigation.

The situation is different with respect to the plaintiff's case against Patterson, the broker. In disposing of this part of the case, the court is exercising its pendent jurisdiction[1] and the law of Massachusetts applies. The plaintiff is unable to recover against the insurer on the principle that he who sues on a contract is bound by its terms. The action against Patterson, however, is based upon negligence in carrying out its duties, or alternatively, for breach of fiduciary duty.

The Massachusetts cases holding that failure to read the policy does not permit an insurer to avoid its terms all deal with actions by insureds against insurers. It does not appear that this principle has been applied in cases against the insurance broker acting as agent for the insured.

In other jurisdictions it has been held that reliance on the broker may relieve the insured of the obligation to read the policy. **Hampton Roads Carriers v. Boston Insurance Co.,** 150 F. Supp. 338 (D. Md., 1957).

In this Circuit, the case that might have provided an answer was disposed of on other grounds. In **Claramitaro v. Gough & King, Inc.,** 250 F.2d 943 (1st Cir., 1958), the broker had, without authority, applied for insurance which limited coverage for fishing parties to day trips from Gloucester. The insured never read the policy, and used the vessel for overnight fishing trips. The loss occurred on a day trip, however. The insurer denied coverage, and the insured brought suit on the policy and recovered the full amount thereof. The insured then sued the broker for his expenses in bringing the successful action against the insured. District Judge McCarthy ruled for the defendant on the ground that the plaintiff was bound by the terms of the policy even though he had not read them. The Court of Appeals, through Chief Judge Magruder, said the "harsh" and "technical" rule might be the law of Massachusetts but that the Court need not consider the question because the

judgment of the District Court should be affirmed on other grounds, namely, that the plaintiff had already recovered the face amount of the policy, which was the defendant's maximum exposure on any view of liability.

There is no reason to apply the technical rules of contract actions to actions against brokers based on breach of fiduciary duty and reliance. This result is supported by Massachusetts cases governing the rights and duties of agents and fiduciaries generally and consistent with other authority. **Bicknell, Inc. v. Havlin,** 9 Mass. App. 497, 402 N.E.2d 116 (1980); **Hampton Roads Carriers v. Boston Insurance Co., supra.**

### Conclusion

On the basis of the foregoing, I conclude that the plaintiff is bound by the terms of the lay-up warranty in the action against Hartford, that the warranty was breached by the voyage to East Boothbay, and that accordingly judgment should enter for the defendant Hartford (including thereby the Hartford Fire Insurance Company and the Hartford Insurance Group).

I conclude further that when Brown invited Smithwick to bid on insurance of the same sort that he had, he was entitled to a bid on commercial hull insurance in the customary form. When he accepted the bid and authorized Smithwick to secure the insurance, he had no reason to believe that a lay-up warranty would be added to the standard policy and was not put on any notice that he should be on the alert for such a warranty. He was entitled to rely on Smithwick to furnish him a standard commercial policy.

Smithwick, on the other hand, was under no general duty to read every provision of a standard hull insurance to a presumably knowledgeable customer.

[1]See Order dated October 24, 1979.

When, however, he applied for a variance from the normal commercial hull policy, he was obliged to notify the insured, particularly in view of his knowledge that SEA FEVER and SEA HOLLY were sometimes used for on-shore trawling in the winter. The plaintiff was entitled to have the choice between such a warranty and a small additional premium. In my opinion Smithwick's failure to so notify Brown at the time the insurance was applied for, or even at the time of issuance, was a breach of his fiduciary duty as an agent. The combination of reliance plus breach equals liability on the part of Smithwick's employer, the defendant Patterson.

Damages are stipulated to be the face amount of the policy, $100,000. Judgment should enter for the plaintiff in that amount plus interest and costs against the defendant Patterson.

### Order for Judgment

Judgment shall enter for the defendants Hartford Fire Insurance Company and Hartford Insurance Group. Judgment shall enter for the plaintiff Sea Fever Corporation against the defendant Patterson, Wylde and Windeler in the amount of $100,000 plus interest and costs.

So ordered.

**Walter Jay Skinner**
**United States District Judge**