MARINUCCI BROS. & CO., INC. *vs.* COMMONWEALTH.

Suffolk. February 6, 1968. — April 4, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Contract*, With Commonwealth, Building contract. *Commonwealth*, Contracts.

Failure of the Department of Public Works to furnish for disposal of material dredged from a river the areas specifically designated in a contract of the Commonwealth with a dredging contractor, by reason of the revocation by the Metropolitan District Commission of its permission to the department to use such areas, was an "act of omission" by the Commonwealth within an article of the contract, and, where it appeared in a proceeding against the Commonwealth by the contractor for compensation for added expenses incurred in disposing of the dredged material elsewhere that the contractor had not complied with the provisions of such article requiring a contractor claiming compensation for work or damage "on account of any act of omission" by the Commonwealth to make a timely written claim therefor and to file an itemized statement thereof with the Commonwealth's engineer and that the article recited that "Unless such statement shall be made . . . the Contractor's claim for compensation shall be forfeited . . . and he shall not be entitled to payment on account of any such work or damage," the contractor was not entitled to recover.

PETITION filed in the Superior Court on March 16, 1967.

The case was heard by *Hale*, J., on an auditor's report and other evidence.

*John E. Sheehy*, Assistant Attorney General (*Peter R. Leone*, Deputy Assistant Attorney General, with him), for the Commonwealth.

*Arthur Brogna* for the petitioner.

SPALDING, J. In this petition pursuant to G. L. c. 258, Marinucci Bros. & Co., Inc. (contractor) seeks damages resulting from an alleged breach of a contract entered into between it and the Commonwealth acting through the Department of Public Works (D.P.W.). The case was tried on an auditor's report (findings not final) and other evidence. The auditor found for the contractor in the amount of $143,651.77. Adopting the findings of the auditor, the judge made additional findings, dealt with numerous requests for rulings, and found for the contractor in the same amount found by the auditor.

Facts found by the auditor and by the judge may be summarized as follows: On September 30, 1960, the D.P.W. entered into an agreement with the contractor for State highway and bridge construction. The contractor, among other things, agreed to dredge and relocate the Mystic River for the construction of Route 93. The contract "was unique in the sense that contrary to the usual provisions in contracts by the D.P.W. peat disposal areas were designated by it in the plans." [1] Certain disposal areas were specifically designated along the river. These areas were provided "at the site of the project in order to reduce the cost to the . . . [Commonwealth, because] if the material had to be trucked away wet and disposed of the prospective bids would be higher and also . . . spillage on the streets would occur." The contractor relied on the availability of these areas in making its bid.

The contractor did not know that the use of the disposal areas depended upon a prior permission granted by the Met-

---

[1] Peat as used in the contract refers to material that is unsuitable for constructing roads and structures.

tropolitan District Commission (M.D.C.) to the D.P.W. After the contractor was awarded the contract and had begun the work of peat excavation and disposal, the M.D.C. revoked the permission granted to the D.P.W.

With no disposal areas available at the site, the D.P.W. faced the added expense of trucking the dredged material elsewhere. To avoid this the D.P.W. and the M.D.C. agreed to make other areas available. Since the new areas were not as suitable as those formerly designated, the contractor lost some of the benefit of the shrinkage properties of the peat and was obliged to build and maintain dikes around the areas twelve to fifteen feet above the height originally planned. "In order" the judge found, "to build and maintain the dikes . . . [at the new height, the contractor] incurred costs of $49,291.77 due to the loss of efficiency by reason of having to pump dredged material over a height of 15 feet. It took 1,348 hours of additional pumping time. This cost the . . . [contractor] at the rate of $70 per hour or . . . $94,360.00." The judge concluded that "the failure of the . . . [D.P.W.] to furnish the 4 areas specified in the plans resulted in a breach of contract and that the . . . [contractor] incurred damages as the result of this breach in the amount of $143,651.77."

To the findings and rulings the respondent claimed seventeen exceptions. Of these, we shall discuss only two (Nos. 4 and 15), for they are dispositive of the case. Exception No. 4 attacks the finding for the contractor in view of the allowance of the respondent's requests for rulings numbered 5, 6, 7, and 8.

These requests were to the effect that (a) in order for the contractor to recover for additional work done or damage sustained, the contractor must file an itemized written statement with the engineer detailing the work done or damage incurred, on or before the fifteenth day of the following month as required by arts. 23 and 58 of the Standard Specifications for Highways and Bridges (Standard Specifications) which are incorporated in the contract; (b) there was no evidence warranting a finding that there was

compliance with either art. 23 or art. 58 of the Standard Specifications; and (c) the Commonwealth did not waive or excuse the contractor from complying with the provisions of art. 58 of the Standard Specifications.

The judge, although allowing these requests, ruled that the contractor's claim was not one for extra work as defined in art. 23 nor was it a claim under art. 58, as it was not based on any act or omission of the respondent or its agents within the meaning of art. 58. The latter ruling was challenged by exception No. 15.

We need not discuss art. 23 for that appears to apply exclusively to extras, and the parties agreed before the auditor "that the issues . . . do not involve 'Extras' as defined in the [Standard Specifications]."

We are of opinion that art. 58 of the Standard Specifications does apply to the contractor's claim, and that failure to comply with the notice provisions, set forth in that article, which were not waived by the Commonwealth, bars the contractor from relief.[2] Article 58 places an affirmative duty on the contractor to make a written claim for damages resulting from any "act of omission or commission by the Party of the First Part or its agents."[3] The contractor argues that the provisions of art. 58 do not apply because there is no "act of omission or commission" on the part of the D.P.W. Rather, it is argued, it was an act of the M.D.C. in revoking permission to use the original disposal areas which resulted in the contractor's damages. We disagree. The failure of the D.P.W. to perform its con-

---

[2] "All claims of the Contractor for compensation other than as provided for in the contract on account of any act of omission or commission by the Party of the First Part or its agents must be made in writing to the Engineer within one week after the beginning of any work or the sustaining of any damage on account of such act, such written statement to contain a description of the nature of the work performed or damage sustained; and the Contractor shall, on or before the fifteenth (15th) day of the month succeeding that in which such work is performed or damage sustained, file with the Engineer an itemized statement of the details and amount of such work or damage. Unless such statement shall be made as so required, the Contractor's claim for compensation shall be forfeited and invalid, and he shall not be entitled to payment on account of any such work or damage."

[3] "Party of the First Part" is defined in the Standard Specifications as the "Commonwealth of Massachusetts by its Department of Public Works."

tractual duty is sufficient to bring the case within art. 58 as an "omission." The contractual duties of the D.P.W. could not be avoided because the M.D.C., also an agency of the Commonwealth, saw fit to withdraw its permission to use the disposal areas originally contemplated. The contract was with the Commonwealth and its obligations could not be diminished by conduct of the M.D.C. The effect of what happened was an omission by the Commonwealth. And the present action is against the Commonwealth.

By the terms of art. 58 the failure of the contractor to make a timely claim in writing based on that omission and an itemized statement setting forth the details of the work done or damage incurred results in a forfeiture of its claim.

The reasons for the forfeiture clause are set out at some length in the Commonwealth's brief. It is there argued that the failure of the contractor to comply with the provisions of art. 58 has placed the Commonwealth at an extreme disadvantage in checking the correctness of the $143,651.77 claim. But, however that may be, the provisions of art. 58 are not invalid and the respondent has a right to insist on compliance with them as a condition precedent to recovery. See *Crane Constr. Co.* v. *Commonwealth,* 290 Mass. 249, 253–254, which denied recovery to a contractor who had failed to comply with the notice requirements of the predecessor of art. 23. See also *M. DeMatteo Constr. Co.* v. *Commonwealth,* 338 Mass. 568, 590.

It follows that the judge erred in ruling that the contractor's claim was not based on any act of omission of the respondent within the meaning of art. 58, and the respondent's exceptions must be sustained.

*Exceptions sustained.*
*Finding for the petitioner vacated.*
*Judgment for the respondent.*