PATERSON–LEITCH COMPANY, INC.,
Plaintiff, Appellant,

v.

MASSACHUSETTS       MUNICIPAL
WHOLESALE ELECTRIC COMPANY,
et al., Defendants, Appellees.

No. 87–1657.

United States Court of Appeals,
First Circuit.

Heard Dec. 11, 1987.

Decided Feb. 16, 1988.

Richard W. Schwartzman with whom Johnson & Schwartzman, Boston, Mass., was on brief, for plaintiff, appellant.

John P. Connelly with whom John D. Hughes and Hutchins & Wheeler, Boston, Mass., were on brief, for defendant, appellee Bechtel Power Corp.

Charles P. Lavelle with whom John J. Ferriter and Begley Ferriter Lavelle &

Welch, P.C., Holyoke, Mass., were on brief, for defendant, appellee Massachusetts Mun. Wholesale Elec. Co.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The United States District Court for the District of Massachusetts granted summary judgment on various claims asserted by plaintiff-appellant Paterson-Leitch Company, Inc. (Palco) against the present appellees, Massachusetts Municipal Wholesale Electric Company (Mass. Electric) and Bechtel Power Corporation (Bechtel). Palco brings the district court's handiwork before us, assigning numerous supposed errors. Having inspected the dimensions and angles of the case from foundation to superstructure, we find the decision below to have been soundly constructed. Hence, we affirm.

I. SITE WORK

Some years ago, Mass. Electric engaged Bechtel to prepare plans, specifications, and contract documents for the erection of the Stony Brook Energy Center, a generating plant in Ludlow, Massachusetts. Palco successfully bid the steel work and entered into a contract with Mass. Electric in July 1979. Bechtel, which had agreed to manage construction of the project, also signed the pact as Mass. Electric's agent. The heart of the bargain was Palco's commitment to design, fabricate, and erect five dual-wall steel stacks complete with the necessary platforms, transitions, flexible connections, and safety devices. The contract price was in excess of two million dollars. The completion date was September 1, 1980.

The best-laid plans of corporate entrepreneurs, like those of mice and men, ofttimes go a-gley; plaintiff was almost two years late in finishing the job. Though tardy, Palco had an explanation. With appellees' approval, it had subcontracted certain work to Springfield Steel Erectors (SSE). Early in June of 1980, SSE became aware that other subcontractors' employees were taking preplanned forty-five minute coffee breaks twice daily. SSE believed this practice to countervail the Project Labor Agreement (PLA),[1] and brought it to the attention of Palco and Bechtel in early July. The coffee breaks were but a part of Palco's problem. It claimed to have experienced and brought to Bechtel's attention, previously, other labor-related difficulties. In plaintiff's eyes, Bechtel was unsympathetic, unresponsive, and at bottom, uncaring. By the end of the summer, Palco had concluded that the delays attributable to the labor slowdowns were irreversible and that appellees did not intend to take corrective measures. Palco wrote to Bechtel on September 11, 1980. The billet-doux stated:

On numerous occasions, while Paterson-Leitch and/or Springfield Steel supervision was in the work area, interferences occurred delaying our boilermakers from continuing work. We will continue to observe this problem and plan to document and record all such interferences for settlement of damages incurred.

It was not until some nine months later, however, that plaintiff wrote to Bechtel to request additional payments (beyond the contract price) for these construction delays. This missive bore a date of June 26, 1981. A second letter was sent on August 25, amplifying the demand. Bechtel was unmoved. On October 15, 1981, it formally denied plaintiff's beseechment for extra recompense. The rejection letter expressly advised Palco that "[a]ny further pursuit of this matter should be handled [by you] in accordance with the contract protest procedure (Ref. Contract Article GC-3)."[2] This

1. The PLA, drafted and signed by Mass. Electric and Bechtel, was to be executed by all contractors and subcontractors on the job. It had been made part of Palco's contract. One segment of the PLA provided that:

There shall be no organized coffee breaks or rest periods during normal working hours. Workmen will be permitted to have personal thermos bottles of coffee, to be consumed during working hours at their assigned work locations.

2. Article GC-3 stated in relevant part:

Any notice of or claims by the Contractor [Palco], all questions as to compensation, extensions of time, or any other matter shall be

pointed reference was to the undeniable fact that, by the terms of plaintiff's contract, dual notification was compulsory: notice of any claim by Palco had to be given initially to the construction manager, Bechtel, and later—if the claim was to be pressed—to the owner, Mass. Electric. It is no exaggeration to say that the dual notice paradigm comprised the core structure of the contractual protest procedure. Yet, Palco flouted it. Instead of responding to Bechtel's October 15 rejection letter within the stipulated fourteen day period, plaintiff did nothing.

On June 7, 1982, as its work belatedly wound down, Palco's president executed a certificate of final payment, which embodied a release. He unilaterally added to the document the notation that the release did not extend to "any monies that may become due [Palco] as a result of [Palco's] request for relief as expressed in letters of 6/26/81 and 8/25/81...." Plaintiff finished its work and left the job. Another hiatus ensued. On November 10, 1982, Demand Construction Services, Inc. (Demand), a consulting engineering firm retained by Palco, wrote to the owner requesting some equitable adjustment of Palco's contract price on account of the slowdown. This overture was spurned.

Time marched on. It was not until March 4, 1985 that Palco sued in the district court. Jurisdiction was premised upon diversity of citizenship and the existence of a controversy in the requisite amount. 28 U.S.C. § 1332. The complaint contained four statements of claim. It sought damages for breach of contract (Count I), for negligent supervision of the work of other subcontractors (Count II), for fraud, because appellees were said to have vouchsafed that organized coffee breaks would not be permitted (Count III), and for perpetrating unfair and deceptive business practices in derogation of an applicable statute (Count IV).

After issue was joined, a United States magistrate held a pretrial scheduling conference on July 19, 1985. At this session, the defendants indicated their intention to file dispositive motions. Although Palco's counsel argued that any such initiatives would be premature, the magistrate established a regimen for the filing of motions and stayed discovery pending resolution of the same. These rulings were embodied in a scheduling order entered on July 24, 1985. *See* Appendix. Notwithstanding that the order was immediately appealable to the district judge, *see* Fed.R.Civ.P. 72(a), and that plaintiff was on notice that its provisions would "control the subsequent course of the action unless modified," Fed.R.Civ.P. 16(e), Palco chose not to contest it. Each defendant thereafter filed a dispositive motion. On October 21, 1986, following briefing and argument, the magistrate recommended that both motions be granted.

Plaintiff filed a timely objection to the magistrate's report and changed its game plan. On December 1, 1986, before the district judge reached the matter, Palco filed a motion and affidavit under Fed.R. Civ.P. 56(f) requesting additional time for discovery.[3] The judge refused. He subsequently adopted the magistrate's report,

---

submitted promptly in writing to Bechtel for determination. All determinations and instructions of Bechtel, whether in response to a question or otherwise, will be final unless the Contractor shall, within fourteen (14) calender days after Bechtel notifies the Contractor of any such determination or instruction, file with Owner [Mass. Electric] a written protest, stating clearly and in detail the basis thereof. Owner will issue a decision upon each such protest, and its decision will be final.... Contractor's failure to protest Bechtel's determination, instruction, or decision, within fourteen (14) days from and after Bechtel's determination, instruction, or decision, shall constitute a waiver by Contractor of all its rights, judicial or otherwise, to further protest....

3. The rule provides:

Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

approved the recommendation, and allowed the defendants' motions. This appeal followed.

Appellant raises a potpourri of issues, procedural and substantive, in its effort to demonstrate that the district court was in error. We deal *infra* with certain of these sallies. The rest we dismiss summarily as altogether meritless.

## II. DENIAL OF DISCOVERY

We first address Palco's lamentation that it was deprived of discovery which it needed to mount a meaningful opposition to the dispositive motions. In particular, plaintiff contends that it should have been given extra time to unearth information bearing on (i) its theory that it was a third-party beneficiary of Bechtel's construction management pact with Mass. Electric, and (ii) appellees' supposed waiver of the contractually mandated protest procedure. Basically, this plea reduces to the idea that the district court should have allowed appellant's afterthought Rule 56(f) motion. The assertion is bootless.

Fed.R.Civ.P. 56(f) comprises a procedural "escape hatch" for a party who genuinely requires additional time to marshal "facts essential to justify [its] opposition" when confronted by a summary judgment motion. *Herbert v. Wicklund*, 744 F.2d 218, 221 (1st Cir.1984). We have visited the purlieus of the rule in the recent past. In *Taylor v. Gallagher*, 737 F.2d 134 (1st Cir. 1984), we implied that invocation of Rule 56(f) did not invariably demand hypertechnical compliance with its terms. *Id.* at 137. In appropriate surroundings, some alternative statement might serve. *Id.* Nevertheless, in *Herbert v. Wicklund*, 744 F.2d at 221–22, we found the absence of a formal Rule 56(f) affidavit to be fatal despite the objector's submission of a loose collection of miscellany, *e.g.*, an opposition to the motion asking for further discovery time, an undocketed letter from counsel to the court's clerk requesting a delay pending certain further investigation. We took pains to distinguish *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.) (en banc), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38

L.Ed.2d 743 (1973), a case where the Fifth Circuit accepted a nonaffidavit pleading—a letter—as sufficient under Rule 56(f). We noted that, unlike in *Herbert*, the *Littlejohn* letter had been docketed, was timely, and referred to the specific facts needed to oppose the summary judgment motion and to the likely source thereof. 744 F.2d at 222.

■ The case at bar requires us to elaborate upon what may constitute substantial compliance in the vernacular of Rule 56(f). Our views may be summarized concisely. An opponent of a summary judgment motion need not follow the exact letter of Rule 56(f) in order to obtain its benefits. Nevertheless, he departs from the plain language of the rule at his peril. When a departure occurs, the alternative proffer must simulate the rule in important ways. It should be made in written form and in a timely manner (that is, served with the response to the motion or filed with the court at the earliest practicable date thereafter). In the extreme case, we can conceive of a circumstances in which a party opposing a dispositive motion may not realize until the initial round of oral argument that he requires additional discovery time. But, it is difficult to envision that a request first made after the conclusion of oral argument could be considered as seasonable. The statement must be made, if not by affidavit, then in some authoritative manner—say, by the party under penalty of perjury or by written representations of counsel subject to the strictures of Fed.R.Civ.P. 11—and filed with the court. Then, too, it should articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet come in from the cold. There must also be shown some realistic prospect that the facts can be obtained within a reasonable (additional) time, and will, if obtained, suffice to engender an issue both genuine and material. Last, the litigant must demonstrate good cause for failure to have conducted the discovery earlier.

These are the benchmarks, we think, by which attempts to invoke Rule 56(f), formally or informally, must be measured.

We do not expect this test to be applied in a wooden fashion. There may well be deserving cases where the district court, in the exercise of sound discretion, will decide to excuse a failure to touch one or more of these bases, or where some idiosyncratic factor may assume overriding importance. Yet, we suggest that counsel desirous of forestalling the swing of the summary judgment axe would do well to heed the tenor and spirit of the criteria which we have mentioned.

■ We proceed to apply this yardstick to Palco's situation. When the defense motions were served, appellant eschewed timely filing of a Rule 56(f) affidavit. Rather, it elected to meet the motions head-on before the magistrate.[4] It lost. To be sure, plaintiff now claims that comments made in its opening memorandum and at oral argument—complaining about the stay of discovery and discussing evidence it desired to pursue—substantially complied with Rule 56(f). But this seems little more than *post hoc* rationalization. Plaintiff merely stated, in an entirely conclusory way, that "[d]iscovery should be commenced" and speculated that "additional facts need to be established through discovery" in order to develop certain legal theories. Standing alone and unadorned, such banalities were entirely inadequate to extract the balm of Rule 56(f). Those cryptic allusions failed to set out any basis for believing that some discoverable material facts did exist. They did not show how the facts sought, if obtained, would help defeat the motions for summary judgment. And they failed satisfactorily to explain why appellant acquiesced in the stay of discovery. *See infra.*

Once it is recognized that Palco did not muster a Rule 56(f) campaign in any meaningful way until *after* the magistrate had ruled, then the futility of its effort becomes apparent. Pretrial discovery was unrestricted to the date of entry of the scheduling order (July 24, 1985), but Palco did nothing to take advantage. Then, it acquiesced in the order staying discovery.[5] We count this nonchalance heavily against the plaintiff. Against this backdrop, it comes with peculiar ill grace for Palco presently to assert that the stay hampered its defense against summary judgment. Courts, like the Deity, are most frequently moved to help those who help themselves. As we stated in *Herbert:*

> Although a district court should generally apply Rule 56(f) liberally, the court need not employ the rule to spare litigants from their own lack of diligence.

*Herbert v. Wicklund,* 744 F.2d at 222.

Here, Palco's conduct exemplified a lack of diligence totally at odds with the spirit, as well as the letter, of Rule 56(f). Appellant had a brief (but sufficient) opportunity to conduct discovery. It acquiesced in the order staying further discovery. It did not seek to reopen discovery as the hearing before the magistrate approached. In advance of that hearing, it neglected to file a Rule 56(f) affidavit or any substantially equivalent documentation. Even after the magistrate had ruled, appellant's affidavit, in addition to being untimely, was woefully deficient. It nowhere set out any reasonable basis for Palco's professed belief that discoverable material facts existed which would thwart the defendants' motions. It was wholly bare of anything which

---

**4.** We note that the objection which plaintiff filed confidently asserted that "[p]laintiff ... bases [its] opposition upon the Affidavits annexed hereto which set forth genuine issues of material fact...." It is readily evident that Palco approached the hearing before the magistrate heedless of Rule 56(f) and altogether content to rest upon its Fed.R.Civ.P. 56(e) affidavits.

**5.** The scheduling order recites that the parties "agreed to" the pertinent terms, including the stay of discovery. *See* Appendix. Appellant says that it did not assent to the moratorium, but objected to it. We need not reconcile this

apparent contradiction. Palco chose not to appeal the stay. The order for that reason became "final." *See* Fed.R.Civ.P. 72(a); Rules for United States Magistrates (D.Mass.), Rule 2(c). Either way—whether the stay was locked into place by agreement of all parties (as recited in the order) or by plaintiff's decision not to contest it—Palco effectively acquiesced in the deferral of discovery. As we have remarked in a different context: "The law ministers to the vigilant, not to those who sleep upon perceptible rights." *Puleio v. Vose,* 830 F.2d 1197, 1203 (1st Cir.1987).

smacked of "good cause" to explain the long delay. It failed entirely to meet the criteria which we think Rule 56(f) embodies. *See supra.*

This horse is dead. It would be pointless to flog it further. This is simply a case where Palco hoisted the Rule 56(f) banner too late, and up much too short a flagpole. The rule was not followed, either literally or in its essence. The district court did not err in deciding the pending motions without first allowing appellant's last-ditch effort to reopen discovery.

## III. THE MAGISTRATE SYSTEM: DE NOVO REVIEW

There is another preliminary point which must be addressed. Appellant exhorts that the Federal Magistrates Act, 28 U.S.C. §§ 631–639, permits it to present before the district court, on that tribunal's de novo review of the magistrate's report and recommendation, theories which it failed to raise before the magistrate. We begin by putting flesh on these bare bones. Although not alleged in its complaint, Palco sought to convince the district court that it was a third-party beneficiary of the construction management agreement between Mass. Electric and Bechtel (and as such, entitled to sue for an alleged breach thereof). The district court turned a deaf ear, believing that the claim was not adequately called to the magistrate's attention. This, appellant says, was wrong. Moreover, even if correct, the district court had an obligation to consider the new theorem regardless. We can accept neither of these suppositions.

As to the first, the district court's determination that Palco failed seasonably to surface its third-party beneficiary argument was not clearly erroneous. As previously noted, the claim was not pleaded. Plaintiff's only reference to the subject before the magistrate occurred in a single sentence in its opposition memorandum, bereft of meaningful citation of authority. A party has a duty to put its best foot forward before the magistrate: to spell out its arguments squarely and distinctly. One should not be allowed to defeat the system by seeding the record with mysterious references to unpled claims, hoping to set the stage for an ambush should the ensuing ruling fail to suit. Given plaintiff's obfuscation, the district court's finding that the theory was not adequately placed in issue before the magistrate was eminently supportable.

Examined in the light of this finding, the remainder of appellant's house of cards tumbles as well. When a magistrate is assigned to hear, and thereafter pass upon, dispositive motions, a party displeased by the ensuing recommendation has a well-defined duty:

> A party objecting to the recommended disposition of the matter shall promptly arrange for the transcription of the record, or portions of it as all parties may agree upon or the magistrate deems sufficient.... Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations.... The district judge ... shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions.

Fed.R.Civ.P. 72(b). *See also* 28 U.S.C. § 636(b)(1)(B) (similar); Rules for United States Magistrates (D.Mass.), Rule 3(b) (similar).

■ Appellant tells us that Rule 72(b)'s requirement of a "de novo determination" by the district judge means that an entirely new hand is dealt when objection is lodged to a recommendation. That is not so. At most, the party aggrieved is entitled to a review of the bidding rather than to a fresh deal. The rule does not permit a litigant to present new initiatives to the district judge. We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never

seasonably raised before the magistrate. *Accord Borden v. Secretary of HHS*, 836 F.2d 4, 6 (1st Cir.1987).

The role played by magistrates within the federal judicial framework is an important one. They exist "to assume some of the burden imposed [on the district courts] by a burgeoning caseload." *Chamblee v. Schweiker*, 518 F.Supp. 519, 520 (N.D.Ga. 1981). The system is premised on the notion that magistrates will "relieve courts of unnecessary work." *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980). Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge. *Cf. James v. Watt*, 716 F.2d 71, 78 (1st Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984) (allowing amendment asserting new theory after district court dismissal "would allow plaintiffs to pursue a case to judgment and then, if they lose, to reopen the case ... to take account of the court's decision ... a practice [which] ... should not be sanctioned in the absence of compelling circumstances"). Such a fast shuffling of the orderly processes of federal litigation should not be encouraged.

In a nutshell, the argument upon which Palco belatedly places such stock could have been, but inexplicably was not, presented to the magistrate in the first instance. The appellant is not entitled to yet another nibble at this particular apple. We conclude without hesitation that the district judge did not abuse his discretion in declining to entertain the nascent third-party beneficiary claim.

IV. THE BREACH OF CONTRACT CLAIMS

Having wended our way through this procedural thicket, we can now confront the merits of the district court's decision. Plaintiff's flagship claims, for breach of contract, are asserted in Count I of its complaint. As to Mass. Electric, the district court ruled that summary judgment was merited because of plaintiff's outright failure to abide by the dual notice mechanism of the contractual protest procedure.[6] The record absolutely forecloses any contrary *factual* finding; appellant concedes that it did not so comply. It attempts, however, to confess and avoid, ruminating that the dual notice provision is unreasonable, unconscionable, and ultimately unenforceable. Yet, this jeremiad comes to us as if from the brow of Zeus, bereft of any respectable support in the caselaw or in legal principle. Appellant insists that there is "something different" about a construction management arrangement, something which sets it apart from the general run of owner/contractor cases. But, Palco neglects to cite a single case to support the distinction. More significantly, it fails to show that such a "difference" calls for abrupt departure from the established legal rules which govern the relationships of those who enter into business dealings.

As a general proposition, when the wording of a contract is unambiguous, the terms will be enforced. *Edmonds v. United States*, 642 F.2d 877, 881 (1st Cir.1981) (applying Massachusetts law). This court has repeatedly declined invitations to alter the provisions of commercial compacts negotiated at arm's length. "It is no appropriate part of judicial business to rewrite contracts freely entered into between sophisticated business entities. Rather, the

---

**6.** Although the pertinent text of the protest procedure was heretofore set out in the margin, *see supra* note 2, we briefly summarize the protocol for ease in reference. The procedure required a contractor, like Palco, to submit claims in writing to Bechtel, as the construction manager. If Bechtel denied relief and the contractor wished to pursue the claims further, the latter was obliged to submit a (second) written notice of the claims directly to the owner (Mass. Electric) within fourteen days of the initial denial. Failure to take this second step was deemed to constitute an abandonment of the claims.

courts must give effect to the language of such agreements and to their discernible meaning." *RCI Northeast Services Division v. Boston Edison Co.*, 822 F.2d 199, 205 (1st Cir.1987) (applying Massachusetts law). *See also Allied Communications Corp. v. Continental Cellular Corp.*, 821 F.2d 69, 73 (1st Cir.1987) (applying Massachusetts law; similar). These truths are particularly self-evident in a case like this one, where none of the parties were babes in the wood, the mechanics of the dual notice provision and the indicated time parameters appear to have been reasonable, and the requisite form of claim was not an unduly complicated one.

In a variation on the identical theme, plaintiff also contends that the dual notice provision should not be enforced absent proof that Mass. Electric was prejudiced by Palco's noncompliance. Albeit the bottle is differently shaped, this seems to us the same old whine. Massachusetts law, which controls in this diversity suit, recognizes no such precondition. *See Marinucci Bros. & Co. v. Commonwealth*, 354 Mass. 141, 145, 235 N.E.2d 783, 785 (1968) ("right to insist on compliance with [written notice requirements is] a condition precedent to recovery"); *Chiappisi v. Granger Contracting Co.*, 352 Mass. 174, 178, 223 N.E.2d 924, 927 (1967) (notice as per contract held to be "prerequisite of any claim for extra cost"); *Crane Constr. Co. v. Commonwealth*, 290 Mass. 249, 253–54, 195 N.E. 110, 112 (1935) (failure to make written statement within contractually stipulated time—one week— precludes claim); *D. Federico Co. v. Commonwealth*, 11 Mass.App.Ct. 248, 252–53, 415 N.E.2d 855, 858 (1981) (where no timely claim filed, "any right the plaintiff may have had to extra compensation was not perfected, and [thus] barred"). Massachusetts law in this respect mirrors the prevailing view elsewhere. *E.g., Nat. Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578, 583 (5th Cir.1974)

(notice "clauses in construction contracts make the written order a condition precedent to an enforceable right to payment for extra work"); *Practical Constr. Co. v. Granite City Housing Authority*, 416 F.2d 540, 543–44 (7th Cir.1969) (strictly enforcing ten day notice provision in construction contract despite lack of apparent prejudice). If there was to be a requirement that the owner show prejudice before taking shelter behind the protest procedure, Palco should have bargained for it and had it inserted in the agreement.

Appellant's last gasp on the subject is that waiver can undercut the dual notice provision. Conceptually, this may be so— but the Massachusetts standard for waiver is an uncompromising one. A finding of waiver must be premised upon "clear, decisive and *unequivocal* conduct on the part of an authorized representative ... indicating that [defendant] would not insist on adherence to the [provision]." *Federico*, 11 Mass.App.Ct. at 253, 415 N.E.2d at 858 (quoting *Glynn v. Gloucester*, 9 Mass. App.Ct. 454, 462, 401 N.E.2d 886, 892 (1980)) (emphasis in original). In this case, the appellant offered only conclusory speculation and surmise on this score. Under conventional Rule 56 jurisprudence, it was Palco's obligation in opposing the defendants' motions to demonstrate the existence of a *genuine* factual dispute on an issue (like waiver) on which it would bear the devoir of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Moody v. Maine Central R. Co.*, 823 F.2d 693, 694 (1st Cir.1987). The record before the district court was entirely barren of any such evidence, written or oral. Accordingly, there was nothing along this line sufficient to derail summary judgment.[7]

■ We hold that plaintiff's admitted failure to abide by the terms of the dual

7. In this instance, the contract which Palco signed contained a specific nonwaiver clause, viz.:

> None of the provisions of the Contract shall be considered waived by Owner or Bechtel unless such waiver is given in writing by Owner or Bechtel.

Article GC–17. Because of the absence of any evidence of waiver in this case, we have no occasion to pass upon the force or effect, if any, of this clause.

notice provision barred the subsequent prosecution of a breach of contract claim against Mass. Electric. *See generally Mirachnick v. Kaplan*, 294 Mass. 208, 209–10, 1 N.E.2d 40, 41 (1936); *Jewett v. Warriner*, 237 Mass. 36, 38, 129 N.E. 296, 297 (1921); *Newton Rubber Works v. Graham*, 171 Mass. 352, 353, 50 N.E. 547, 549 (1898).

■ This same reasoning, we think, could be used to dispatch the breach of contract claim against Bechtel. The district court, however, employed an alternative ground, dismissing the claim because Bechtel was not itself a principal and was not in privity of contract with Palco. Given the uncontradicted evidence that Bechtel, with the full awareness of all concerned, acted in the premises only as an agent for a fully-disclosed principal,[8] the district court's rationale was unassailable. The law is settled in Massachusetts that, "[u]nless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract." *Porshin v. Snider*, 349 Mass. 653, 655, 212 N.E.2d 216, 217 (1965) (citations omitted). *See also Henry B. Byors & Sons, Inc. v. Board of Water Comm'rs*, 358 Mass. 354, 362, 264 N.E.2d 657, 663 (1970); *Cass v. Lord*, 236 Mass. 430, 432, 128 N.E. 716, 717 (1920).

As to both defendants, then, plaintiff failed to establish the existence of any genuine issue of material fact sufficient to salvage Count I. The district court did not err in ruling that the appellees were entitled to *brevis* disposition of Palco's contract claims. And in light of this outcome, we have no need to address appellees' further assertion that the contract claims were foreclosed by the "no-damage-for-delay" clause of the agreement, Article GC–29. *See generally Wells Bros. Co. v. United States*, 254 U.S. 83, 87, 41 S.Ct. 34, 35, 65 L.Ed. 148 (1920).

## V. CLAIMS IN TORT AND UNDER CHAPTER 93A

The district court ruled that the remaining three statements of claim were all time-barred. To reiterate briefly, these claims sounded, respectively, in negligence (Count II), fraud (Count III), and unfair trade practices (Count IV). The court held that the first two of these initiatives had to be brought within three years,[9] and the last within four years.[10] No party in interest disputes that these limitation periods apply. In a diversity case, we must enforce them. *See Molinar v. Western Electric Co.*, 525 F.2d 521, 531 (1st Cir.1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976).

---

**8.** Bechtel was clearly identified on the signature page of the construction management agreement as "agent for" Mass. Electric. Furthermore, the contract between Palco and Mass. Electric stated unequivocally that:

Owner has designated Bechtel Power Corporation ("Bechtel") as its agent, authorized to enforce Owner's rights as specified in the Contract.

Article GC–3.

**9.** Appellant concedes that the claims asserted against Bechtel in Counts II and III were governed by Mass.Gen.Laws ch. 260, § 2B ("Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property ... shall be commenced only within three years next after the cause of action accrues; ....."). It argued below that a different statute, Mass.Gen.Laws ch. 260, § 2A, pertained to the tort-based claims against the property owner. Inasmuch as section 2A's lifespan (suits "shall be commenced only within three years next after the cause of action accrues") is identical to that dictated by section 2B, it does

not matter for our purposes which statute controls vis-a-vis Mass. Electric.

**10.** The statute upon which Count IV was founded read in pertinent part:

Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice ... may, as hereinafter provided, bring an action

....

Mass.Gen.Laws ch. 93A, § 11. So postured, the claim was subject to the four year limitations period contained in Mass.Gen.Laws ch. 260, § 5A. *See Duco Associates, Inc. v. Lipson*, 11 Mass.App.Ct. 935, 936, 416 N.E.2d 555, 556 (1981). The same accrual principles which infuse general tort statutes of limitations are used in applying § 5A. *See, e.g., Levin v. Berley*, 728 F.2d 551, 556 (1st Cir.1984).

Unanimity of opinion as to overall time parameters is but a piece of the puzzle; what remains at issue is appellant's contention that the times (three and four years, respectively) had not run. Of necessity, this calls for ascertainment of the date(s) on which the claims accrued. Appellant maintains that none of the claims underlying Counts II, III, and IV matured until June 7, 1982 at the earliest (when Palco executed the release and certificate of final payment). This, we think, is too generous an assessment.

Under Mass.Gen.Laws ch. 260, § 2B, causes of action which sound in negligence accrue no later than the time when a party gains knowledge (actual or constructive) that it has sustained an injury. *White v. Peabody Constr. Co.,* 386 Mass. 121, 129–30, 434 N.E.2d 1015, 1020 (1982).[11] Similarly, actions which implicate Mass.Gen.Laws ch. 260, § 5A accrue when plaintiff knows or reasonably should have known of harm attributable to a defendant's conduct. *Levin v. Berley,* 728 F.2d 551, 556 (1st Cir. 1984). Accordingly, the clock began to tick on Palco's claims at the time when it knew, or should have known, that an injury stemming from defendants' acts or omissions had been visited upon it.

The record is incontrovertibly clear that, by the end of the summer of 1980 at the outside, plaintiff knew that the steel work could not be finished on schedule. It was equally evident, from plaintiff's coign of vantage, that the lag was a direct and adverse consequence of the ongoing labor problems. At that time, Palco concluded that Bechtel and Mass. Electric were the parties responsible for the difficulties and the consequent delay because they had been "totally ineffective" in their enforcement of the PLA. Thus, by mid–1980, appellant learned of the incidence and ad-verse impact of the labor problems at the job site, knew that the defendants were to blame, and was aware, by its own admission, that neither Bechtel nor Mass. Electric were prepared to take any corrective action whatever. As plaintiff's agent, Demand, put it:

> ... by mid-September [1980], the coffee breaks had been quietly incorporated into the project by default. [Palco] could not prevent these coffee breaks and Bechtel and the Owner chose not to.... It was obvious to [Palco] that nothing was going to be done about this situation.

As is evidenced by Palco's September 11, 1980 letter to Bechtel (a telling excerpt from which is quoted *supra* at 986), plaintiff unquestionably knew by then that it had sustained precisely the injury of which it complains in this lawsuit. Indeed, the claim submission compiled by Demand on Palco's behalf in the fall of 1982 left no room to doubt that every last dime's worth of the supposed damages arose in the mid–1980 time frame.[12]

Appellant contends, notwithstanding, that June 7, 1982 is the appropriate accrual date. It hypothesizes that it did not know with certainty until then that the prospect of additional compensation for the delays was fantastical. But even if true, that is of little consequence. The Massachusetts Supreme Judicial Court has repeatedly held that "a cause of action accrues on the happening of an event likely to put the plaintiff on notice." *Hendrickson v. Sears,* 365 Mass. 83, 89, 310 N.E.2d 131, 135 (1974). *See also White,* 386 Mass. at 129, 434 N.E.2d at 1020; *Friedman v. Jablonski,* 371 Mass. 482, 485–86, 358 N.E.2d 994, 997 (1976). The "notice" which the law requires is notice of the facts and circumstances giving rise to the claim—not notice as to whether the tortfeasor will

---

11. To the extent that Mass.Gen.Laws ch. 260, § 2A may be applicable, *see supra* note 9, the accrual principle would be the same. *E.g., Hendrickson v. Sears,* 365 Mass. 83, 89–90, 310 N.E. 2d 131, 135 (1974).

12. As previously mentioned, Demand, acting for appellant, requested an "equitable adjustment" of the contract price by submission dated November 10, 1982. It pegged Palco's financial loss "[d]ue to the Owner's and Bechtel's negligent enforcement of the Contract" at $222,087. *Id.* at 1, 18. In an addendum, Demand purported to break out the calculations leading to quantification of the dollar amount of the claim. *See* R.A. 112. This chart graphically illustrated that *all* of the contractor's claimed damages were attributable to delays which occurred between June 12, 1980 and August 30, 1980.

pay. *Cf. Mansfield v. GAF Corp.*, 5 Mass. App.Ct. 551, 555, 364 N.E.2d 1292, 1295 (1977) (cause of action accrued when leaks in roof discovered, not when plaintiff later learned satisfactory repair impossible). If the law were otherwise, statutes of limitations would be meaningless, for they would not begin to run until the injured party had satisfied itself that its antagonist would not "do the decent thing." Such a subjective standard would wreak havoc with the law's ability to grant repose and would be an open invitation to the assertion of the stalest of claims.[13]

█ We need go no further. Palco had the requisite notice by September 11, 1980 at the latest; it knew that appellees were permitting the offensive coffee breaks to transpire and that its construction schedule had bogged down, with the consequent loss of man hours and profits. The statements of claim limned in Counts II, III and IV of the complaint were all subject to limitation periods of no more than four years. Because no genuine issue of material fact existed as to when these causes of action accrued, and since accrual thereof was complete approximately four and one half years before legal action was instituted, the claims were time-barred.

## VI. CONCLUSION

We recapitulate briefly. The district court did not err in focussing on plaintiff's lack of diligence and rebuffing the lame attempt belatedly to inject Rule 56(f) into the case. Palco acquiesced in the stay of discovery contained in the scheduling order, and elected to wage the summary judgment war with the ammunition it had on hand. As we have shown above, it was firing mostly blanks. Its Micawberish effort to fortify the ramparts by invoking a supposed need for added discovery was,

given its exiguous proffer, too late and too little.

Nor was appellant improperly limited in pressing its case. Having in mind that the third-party beneficiary theory was neither pleaded in Palco's complaint nor satisfactorily raised before the magistrate, the district court acted well within its discretion in refusing to allow tardy reliance upon such a postulate. Under the Federal Magistrates Act and Rule 72(b), the district judge's duty was to scrutinize de novo only those objections which related to points placed squarely in issue before the magistrate. The third-party beneficiary theory was never adequately preserved for such review.

Turning to the summary judgment motions, we believe that the court below discerningly assayed the record. We have undertaken the "abecedarian, almost one dimensional, exercise" which Rule 56 requires. *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987). Palco's "most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom" were not in this instance enough "to create any authentic question of material fact." *Id.* Simply put, appellant's proffered case was not arguably "sufficient ... to require a jury to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (citations omitted), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Based on facts which could not be gainsaid, the district court concluded—as do we—that the agreed protest procedure was valid and enforceable according to its tenor. Appellant's failure to comply with the dual notice aspect of the protocol was legally inexcusable and its contractual claims were doomed by the omission. And at the expense of bringing coals to Newcastle, we remark that Bechtel—which acted solely as

---

**13.** Appellant relies on *Rich v. Arancio*, 277 Mass. 310, 178 N.E. 743 (1931), for the proposition that, in construction cases, statutes of limitations do not accrue during the course of ongoing work under the contract. *Rich* teaches, Palco tells us, that accrual starts only after performance is past. We believe appellant's reliance on *Rich* to be sadly misplaced. As the

district court correctly noted, cases like *Rich* advert to claims *ex contractu;* the principles enunciated therein have no pertinence to causes of action like those contained in Counts II, III, and IV of plaintiff's complaint. *See Paterson–Leitch Co. v. Mass. Electric*, C.A. No. 85–0100–F, slip op. at 18–19 & n. 9 (D.Mass. Apr. 1, 1987) [available on WESTLAW, 1987 WL 8945].

agent for a disclosed principal—could not be held liable for breach of the owner's contract with Palco.

As to the remaining counts, the record makes manifest that appellant was fully apprised of the essential ingredients of its causes of action by the end of the summer of 1980 at the outside. Yet, it did not sue until some four and a half years later. There was no doubt, as the district court held, that the claims delineated in Counts II, III, and IV had grown moldy by that time.

No patina of uncertainty overspreads this record. The court below was on solid ground in granting judgment for both defendants on all of the counts contained in the complaint. As *Celotex* instructs:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 106 S.Ct. at 2555. This is clearly a case of the latter stripe.

*Affirmed.*

## APPENDIX

### PATERSON–LEITCH COMPANY, INC.

v.

### MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY, ET AL.

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 85–0100–F

### PRETRIAL SCHEDULING ORDER

July 24, 1985

PONSOR, U.S.M.

Counsel for all parties appeared before this court for a pretrial scheduling conference on July 19, 1985 and agreed to the following order:

1. Defendants will have until September 20, 1985 to file their dispositive motions with supporting memoranda, affidavits or other supporting material.

2. Plaintiff will have until October 18, 1985 to file its opposition, with a memorandum, affidavits or other supporting material.

3. Defendants will have until October 25, 1985 to file any reply memoranda.

4. Counsel will appear again before me on October 31, 1985 at 2:00 p.m. for oral argument in regard to defendants' dispositive motions.

5. All discovery in this matter is hereby stayed pending resolution of defendants' dispositive motions.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. Magistrate