915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Antonio LOPEZ-MORALES, Plaintiff, Appellant,
v.
Mercedes OTERO-FERNANDEZ, ET AL., Defendants, Appellees.
 No. 89-2133.
 United States Court of Appeals, First Circuit.
 Sept. 28, 1990.
 
 Appeal From the United States District Court for the District of Puerto Rico; Jose Antonio Fuste, District Judge.
 Francisco M. Dolz-Sanchez, for appellant.
 Reina Colon De Rodriguez, Assistant Solicitor General, Department of Justice, with whom Jorge E. Perez Diaz, Solicitor General, and Norma Cotti Cruz, Deputy Solicitor General, were on brief, for appellees.
 D.P.R.
 AFFIRMED.
 Before TORRUELLA, SELYA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Anthony Lopez Torres died on October 18, 1987, while incarcerated at La Pica Penal Camp in Jayuya, Puerto Rico. On October 17, 1988, the decedent's mother, Antonia Lopez Morales, instituted the present civil rights action under 42 U.S.C. Sec. 1983 alleging that the defendant officials of the Commonwealth of Puerto Rico Corrections Administration, in their individual and official capacities, acted with deliberate indifference to decedent's serious medical condition, in violation of the Eighth Amendment to the United States Constitution, by ordering and effecting decedent's transfer to and detention at La Pica Penal Camp.[1] The district court entered summary judgment for all defendants. Plaintiff appealed. We affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 Plaintiff requested and received two extensions of time to respond to defendants' first motion for summary judgment. Plaintiff did not request an extension of time to respond to the amended motion for summary judgment. Instead, on October 27, 1989, some forty days after her response to the amended motion for summary judgment was due, plaintiff moved to record depositions by other than stenographic means. See Fed.R.Civ.P. 30(b)(4). The court did not act on the motion to record depositions but granted summary judgment to all defendants on the grounds that plaintiff did not (1) plead a sufficient causal nexus between defendants' actions and decedent's death or (2) demonstrate an actionable constitutional claim in opposition to the amended motion for summary judgment.
 
 II
 DISCUSSION
 
 4
 Plaintiff failed to satisfy either the express requirements of Federal Rule of Civil Procedure 56(f)[2] or the criteria for an acceptable alternative proffer.
 
 
 5
 We recently delimited the contours of Rule 56(f) in Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985 (1st Cir.1988). When a nonmovant fails to satisfy the strictures of Rule 56(f), "the alternative proffer must simulate the rule in important ways." Id. at 988. The written opposition to the motion must be made in some "authoritative manner," such as under penalty of perjury; it should articulate a "plausible basis" for the party's belief that specific material facts support the opposition to the motion; it should elucidate that those facts can be discovered within a reasonable time; and it "must demonstrate good cause for failure to have conducted the discovery earlier." Id. Although we stress that an alternative proffer may be sufficient even though it does not fully satisfy all criteria, "we suggest that counsel desirous of forestalling the swing of the summary judgment axe would do well to heed the tenor and spirit of the criteria which we have mentioned." Id. at 989.
 
 
 6
 Plaintiff's motion to record depositions by non-stenographic means fell far short of meeting the alternative proffer criteria prescribed in Paterson-Leitch. The motion merely sought to substitute a tape recording for the customary stenographic deposition. The motion did not advert, even in a general way, to the subject matter of the proposed depositions. The motion failed to allege that there were specific, material, discoverable facts with which to oppose summary judgment, much less what those facts were or the anticipated timing and manner of their discovery. The motion was not vouchsafed in an "authoritative manner." Even though plaintiff had two months to respond after receiving defendants' amended motion for summary judgment, the motion to record depositions did not explain why this had not been adequate time to conduct the necessary discovery, much less why such discovery had not been accomplished during the twelve months since plaintiff filed her complaint. See Herbert v. Wicklund, 744 F.2d 218, 222 (1st Cir.1984) ("Although a district court should generally apply Rule 56(f) liberally, the court need not employ the rule to spare litigants from their own lack of diligence.").
 
 
 7
 As for the merits of the case, the burden was on plaintiff to demonstrate a genuine issue of material fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir.1989). Plaintiff in the instant case pointed up no genuine issue of material fact to the district court. In their summary judgment motion, defendants asserted that there was an absence of evidence, see Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Brennan, 888 F.2d at 191, on two essential elements of plaintiff's section 1983 claim: plaintiff failed to show a causal connection between specific defendants' actions and plaintiff's federal deprivation; and plaintiff failed to allege a deprivation of a constitutional right under the eighth amendment. The district court dismissed the complaint on both grounds. Since we find that plaintiff plainly failed to establish a deprivation of a constitutional right, we need not address the issue of causation.
 
 
 8
 To establish an eighth amendment violation, plaintiff must demonstrate that defendants' actions amounted to "unnecessary and wanton infliction of pain," Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). Accord Whitley v. Albers, 475 U.S. 312, 320 (1986).[3] The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" satisfies these elements. Estelle, 429 U.S. at 104. Yet, the Court has also indicated that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.
 
 
 9
 Plaintiff's "deliberate indifference" claims under the eighth amendment were based on (1) decedent's transfer to La Pica Camp, where there were inadequate medical facilities; (2) the unavailability of adequate medical care on the premises at La Pica when decedent suffered the fatal asthma attack; and (3) the failure to train the staff to handle such emergencies.
 
 
 10
 Plaintiff alleges that the prison transfer itself evidenced deliberate indifference to decedent's medical condition, since there was no oxygen, ambulance, or twenty-four hour medical staff at La Pica.[4] Even were we to conclude that this could constitute deliberate indifference, there is no factual allegation, and no evidence mentioned or provided, which indicates that any named defendant who had any role in determining the appropriateness of decedent's transfer knew or should have known that the medical facilities available at or near La Pica were inadequate for decedent's needs. In fact, the only defendant who is alleged to have participated in the transfer, Dr. Poupart, was shown only to have received and approved a recommendation from State Penitentiary Superintendent Clemente DeJesus to transfer decedent to La Pica for the purpose of "better placement."[5] This hardly demonstrates or intimates deliberate indifference to decedent's medical needs.
 
 
 11
 The record does not support an inference, nor does plaintiff allege, that any defendant ever deliberately denied decedent medical treatment at La Pica. Decedent visited the La Pica medical area and nearby medical facilities on twenty-one separate occasions. Plaintiff does not allege any refusal of adequate medical treatment or care on these visits. Rather, plaintiff alleges that some defendants had "the legal duty to establish programs to offer adequate medical care and hospital services to each and every inmate under the care and custody of the Correctional Administration" and that other defendants "had the responsibility to see that the inmates at La Pica Camp received adequate medical care ... [and] the direct responsibility to see that the decedent receive his medications and to provide adequate instructions to the penal guards in the case of an emergency." Yet, not only do these general allegations of supervisory neglect fail to rise to the level of deliberate indifference but they are unsupported by specific facts. "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See Celotex, 477 U.S. at 324 (adverse party may oppose a summary judgment motion "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"); Brennan, 888 F.2d at 191 ("It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue.").
 
 III
 CONCLUSION
 
 12
 The plaintiff failed to demonstrate the existence of a genuine issue of material fact. Accordingly, defendants were entitled to summary judgment. See Fed.R.Civ.P. 56(c).
 
 
 13
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Plaintiff also raised a fourteenth amendment claim based on her right to motherhood. Neither the Supreme Court nor this Circuit recognizes a liberty interest in the continued life of a relative. Valdivieso Ortiz v. Burgos, 807 F.2d 6, 7-9 (1st Cir.1986)
 In addition, a conclusion that governmentally caused termination of, or encroachment on, the parental interest in the continued relationship with a child always is actionable would constitutionalize adjudication in a myriad of situations we think inappropriate for due process scrutiny.... Moreover, the problem of giving definition and limits to a liberty interest in this vast area seems not only exceedingly difficult but to a considerable extent duplicative of the wisespread existence of state causes of action ... which provide some compensation to grieving relatives.
 Id. at 9. We hold in the circumstances of the instant case that the plaintiff presents no actionable fourteenth amendment claim.
 
 
 [2]
 Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just
 Fed.R.Civ.P. 56(f).
 
 
 [3]
 The Whitley Court held,
 To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.
 475 U.S. at 319.
 
 
 [4]
 Plaintiff alleges, and the district court found, that defendants transferred decedent while knowing of his asthmatic condition
 
 
 [5]
 Plaintiff did not sue Superintendent DeJesus or any other person responsible for recommending decedent's transfer to La Pica, including the two other members of the Classification and Treatment Committee