45 F.3d 423
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 CARIBBEAN WHOLESALES AND SERVICE CORPORATION and Supreme
Electronics Distributors, Inc., Plaintiffs, Appellants,
v.
THE FIRST NATIONAL BANK OF BOSTON, N.A., Defendant, Appellee.
CARIBBEAN WHOLESALES AND SERVICE CORPORATION and Supreme
Electronics Distributors, Inc., Plaintiffs, Appellees,
v.
THE FIRST NATIONAL BANK OF BOSTON, N.A., Defendant, Appellant.
 Nos. 94-1757, 94-1788.
 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT.
 Jan. 26, 1995.
 
 Hector F. Martinez-Jimenez for Carribbean Wholesales and Services Corporation and Supreme Electronics Distributors, Inc.
 Manuel Moreda-Toledo for The First National Bank of Boston, N.A.
 Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Stahl, Circuit Judge.
 Per Curiam.
 
 
 1
 This was once a potentially complex case concerning commercial and banking events and practice. Because of procedural default, it now presents only easily resolved issues concerning the district court's exercise of discretion.
 
 
 2
 The plaintiffs, Caribbean Wholesales and Service Corporation and Supreme Electronics Distributors (Caribbean), a wholesaler of electronic appliances, alleged that Novedades Guerra (Novedades), a local retailer, purchased appliances from Caribbean with checks that were returned by the defendant, the First National Bank of BostonBB, for lack of sufficient funds. Unable to collect from Novedades, Caribbean filed this action to collect from FNBB the sum of the returned checks, plus lost profits and other damages totalling $3,000,000. The allegations of the complaint sounded in contract, negligence, breach of fiduciary duties, unsound banking practices, tortious interference with contractual opportunities, and, principally, fraud. The essential theme was that FNBB induced Caribbean to sell appliances on credit to Novedades upon the representation that FNBB would honor Novedades' checks, that FNBB reneged on its representation, failed to monitor Novedades, and caused checks payable to Caribbean to be dishonored.
 
 
 3
 The record reveals some 169 docket entries in a three-year period-over one a week-of motions, requests for extensions, orders, responses, replies to responses, objections, opposition to objections, notices, and reports. The following crucial events took place fifteen months after filing of the complaint:
 
 
 4
 March 15, 1993-FNBB moves for summary judgment. No opposition is filed within ten days, as Local Rule 311.5 required, nor is any request made for extension of time.
 
 
 5
 March 30, 1993-At pretrial conference, plaintiffs request an extension until April 12 to file an opposition to summary judgment; this is granted. But no opposition was filed.
 
 
 6
 March 31, 1993-Plaintiffs' counsel moves to withdraw.
 
 
 7
 April 7, 1993-Plaintiff and counsel have composed their differences, and request another extension until April 27. This is denied.
 
 
 8
 April 27, 1993-Plaintiffs submit yet another motion asking for "a ten working day extension" to file their opposition. This also is denied.
 
 
 9
 April 28, 1993-With only the bank's uncontested factual submission before him, the magistrate judge recommends granting the summary judgment motion.
 
 
 10
 May 13, 1993-The district court approves the report of the magistrate judge. On the same day, plaintiffs file an opposition to the report, accompanied by a request to file a second amended complaint and a motion tendering anticipatory testimony by an expert witness who had been excluded.
 
 
 11
 Following this, the court generously set aside its May 13 judgment, accepted "Plaintiffs' Objection to the Magistrate Judge's Report and Recommendation," and granted leave to FNBB to file an opposition. FNBB promptly complied, making the following salient points:
 
 
 12
 1. The late request to amend, offered four months after the December 22, 1992, Initial Scheduling Conference Order (which established December 31, 1992, as the cut-off date for amending pleadings, and which stated, "These dates shall not be changed.") should not be allowed. The bank cited Riofrio Anda v. Ralston Purina, Co., 959 F.2d 1149, 1154-55 (1st Cir. 1992) (denial of motion to amend two months after deadline.)
 
 
 13
 2. The motion to allow the anticipated testimony of plaintiffs' expert witness Myers should not be allowed. Plaintiffs had not complied with the Initial Scheduling Conference Order (concerning notice of the identity of a proposed witness, a short statement of the subject of testimony, justification of a late addition, and a copy of the expert's curriculum vitae). The order had stated: "Non-compliance with this order will result in such witnesses not being allowed to testify at trial." Moreover, the magistrate judge's order of March 16, rejecting the witness, had been appealed by plaintiffs, and previously affirmed by the district court on April 13.
 
 
 14
 3. The magistrate judge's denial of plaintiffs' third request for an extension of time to file objections to the report should be upheld.
 
 
 15
 4. On the merits of plaintiffs' claim that summary judgment was not warranted, plaintiffs failed to present any argument before the magistrate judge and may not use the de novo review proceedings afforded by Fed. R. Civ. P. 72(b) to offer new material. FNBB cited Paterson-Leitch v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988), where we said: "In a nutshell, the argument ... could have been, but inexplicably was not, presented to the magistrate in the first instance. The appellant is not entitled to yet another nibble at this particular apple." See also Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987).
 
 
 16
 The district court, after considering the Objection and the Opposition, first denied plaintiffs leave to file a Second Amended Complaint, then refused to admit the anticipated testimony of plaintiffs' expert witness. Having made these rulings, the court then denied plaintiffs' motion for reconsideration and reaffirmed its adoption of the magistrate judge's Report and Recommendation on the basis of the uncontroverted facts that were before him. The court thereupon entered summary judgment for FNBB.
 
 
 17
 We readily affirm. The district court took action extraordinarily favorable to plaintiffs in entertaining their untimely objections to the magistrate judge's Report in the absence of any meritorious excuse. The court's most crucial decision was to refuse the request to file a Second Amended Complaint. That this was within its discretion is clear. We doubt that a case can be found where the refusal of such a request, made four months after a deadline for amended pleadings, and in the absence of significant extenuating circumstances, has been reversed for abuse of discretion. To the extent that such an amended pleading replicated its predecessor, its exclusion made little difference; to the extent that it introduced new material, its admission at such a late date would have initiated a significantly altered litigation. Moreover, allowing new material and issues based therein, which were not presented to the magistrate judge, would have violated the longstanding principle recognized in Paterson- Leitch, 840 F.2d at 990-91. We have scanned the new material and see nothing to indicate that its exclusion worked any injustice. There was not abuse of discretion.
 
 
 18
 The exclusion of the "anticipated" testimony of plaintiffs' expert witness also obviously was not an abuse of discretion. The original ruling stemmed from plaintiffs' failure to comply with the Initial Scheduling Conference Order and no reason was given to support changing this decision.
 
 
 19
 Given these rulings, the only factual materials before the court were those submitted to the magistrate judge and not controverted by plaintiffs. These provided no basis for a reversal of summary judgment.
 
 
 20
 We refuse to interfere with the district court's decision not to impose sanctions for temerity at the trial level. We cannot recall any instance where we have found a similar ruling to be an abuse of discretion. But, whatever may have been the merits at the outset of this litigation, there could have been no reasonable expectation of success in this appeal. We therefore award defendant double costs and $1,000 toward its attorney's fees, to be chargeable to appellants and their counsel jointly.
 
 
 21
 We affirm the judgments underlying both appeals. Costs and fees as indicated.