USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1309

 MAINE GREEN PARTY,

 Plaintiff, Appellant,

 v.

 MAINE, SECRETARY OF STATE,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 Campbell, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 

 Gary Sinawski for appellant.
 Phyllis Gardiner, with whom Andrew Ketterer, Attorney General,
Thomas D. Warren, State Solicitor, and Peter J. Brann, Assistant
Attorney General, were on brief for appellee.

March 2, 1999

 
 

 STAHL, Circuit Judge. Following the 1996 presidential
election, Maine's Secretary of State informed plaintiff-appellant
Maine Green Party that it was disqualified from official party
status because its presidential nominee, Ralph Nader, had failed to
receive at least 5% of the Maine presidential vote. See 21-A
M.R.S.A. 301(1)(C) (1992) (requiring, inter alia, previously-
qualified parties to receive at least 5% of the presidential vote
in presidential election years and at least 5% of the gubernatorial
vote in gubernatorial election years to retain official party
status). Plaintiff subsequently filed a declaratory judgment
action claiming, insofar as is here relevant, that 301(1)(C)'s
presidential vote requirement violates plaintiff's First and
Fourteenth Amendment rights because it effectively prohibits the
formation of new political parties that lack national
organizations. In due course, the parties cross-moved for summary
judgment.
 As developed in its summary judgment papers, plaintiff's
argument was a tripartite syllogism: (1) "the backing of a
nationally known and reasonably capable national party is essential
for a presidential candidate of a state party if he or she is to
have credibility with the voters in that state," Plaintiff's
Objection to Defendant's Motion for Summary Judgment and Cross
Motion for Summary Judgment with Incorporated Memorandum of Law at
7; (2) Maine's presidential vote requirement has the practical
effect of "prohibit[ing] the formation of third parties from within
the State of Maine that have no national organization[s]," id. at
10, and (3) the presidential vote requirement thus forecloses the
development of new political parties in Maine, as new parties will
almost inevitably lack national organizations, see id. In
presenting this argument, plaintiff also asserted that it had had
no intention of fielding a candidate for the 1996 presidential
election; it had only done so after learning that it faced
disqualification and in the hope that Mr. Nader would receive
enough of the vote to obviate the need for this litigation.
 The district court referred the matter to Magistrate
Judge Cohen for a report and recommendation. Magistrate Judge
Cohen recommended that summary judgment be entered for the State
and against plaintiff. He initially questioned the foundational
premise of plaintiff's argument, reasoning that "it is possible
that Maine voters who care enough about the official status of a
new political party would be willing to vote for that party's
presidential candidate even if that candidate cannot win because he
or she lacks a national organization or presence." Maine Green
Party v. Secretary of State, Civil No. 96-261-B-C, Recommended
Decision on Cross-Motions for Summary Judgment at 12 (D. Me. filed
Dec. 24, 1997). In any event, he concluded that the presidential
vote requirement was insufficiently burdensome to warrant strict
scrutiny, see id. at 12-14 (applying Supreme Court and First
Circuit case law), suggesting that "the restriction at issue here
in no way regulates the organization and development of political
parties," id. at 14-15. In declining to apply strict scrutiny,
Magistrate Judge Cohen contrasted 301(1)(C) with statutes
prohibiting the governing bodies of political parties from
endorsing candidates in their parties' primaries, see Eu v. San
Francisco County Democratic Central Comm., 489 U.S. 214, 222-33
(1989) (striking down such a statute), and with statutes
prohibiting political parties from allowing independent voters to
participate in their primaries, see Tashjian v. Republican Party of
Conn., 479 U.S. 208, 213-25 (1986) (similar). Applying the more
lenient rational basis review, Magistrate Judge Cohen concluded
that 301(1)(C) passed constitutional muster with room to spare. 
See Maine Green Party, Recommended Decision at 14-16. 
 Apparently after having secured new counsel, plaintiff
objected to the report and recommendation. But its objection set
forth an additional argument not urged in the summary judgment
papers: that it would be unconstitutional to apply 301(1)(C) to
a party, like itself, which chooses to organize solely on the state
and local level. We pause here to emphasize this shift in
plaintiff's position. Prior to filing its objection to the report
and recommendation, the thrust of plaintiff's argument, as we have
said, was that it would be unconstitutional to apply 301(1)(C)'s
presidential vote requirement to a new party, like itself, that
lacked the resources to support a national organization. In
contrast, plaintiff's objection for the first time suggested that
plaintiff's lack of a national organization was instead an
outgrowth of the party's philosophical commitment to operate only
on the state and local level. The district court, facing time
constraints related to the then-upcoming 1996 primary elections,
accepted the magistrate judge's recommended disposition without
commenting upon the new twist put on plaintiff's argument by
plaintiff's new counsel, or even indicating whether it had given
the argument plenary consideration. 
 On appeal, plaintiff has effectively elected to develop
and press only the argument that application to it of 301(1)(C)'s
presidential vote requirement unconstitutionally interferes with
one of its associational first principles: to remain a solely
local party. By way of elaborating this position, plaintiff
further asserts before us that it has "a constitutional right to
choose not to run candidates for president at all." Appellant's
Brief at 13. The State, though apparently perceiving plaintiff's
argumentative shift, has not presented us with a developed
responsive argument; it has merely sought to distinguish Eu and
Tashjian, and it has made little mention of plaintiff's asserted
right not to run presidential candidates. 
 The distinction between the position taken by plaintiff
at the summary judgment stage and the position taken by plaintiff
on appeal strikes us as potentially crucial. If, on the one hand,
plaintiff was unable to field a viable presidential candidate
because it was new and therefore lacked the support and resources
to implement a national organization, we could, at the very least,
rest assured that 301(1)(C) was operating within contemplated
circumstances. The statute plainly was intended to assure that
official parties be sufficiently supported. See Jenness v.
Fortson, 403 U.S. 431, 442 (1971) ("[T]here is surely an important
state interest in requiring some preliminary showing of a
significant modicum of support before printing the name of a
political organization's candidate on the ballot."); see alsoLibertarian Party of Maine v. Diamond, 992 F.2d 365, 371-72 (1stCir. 1993) (state may properly require a political party to
demonstrate continued "substantial support" among the electorate as
a condition of official party status). Use of the presidential
vote requirement to exclude from the ballot a party formed on a
more traditional model (i.e., one that intends, at least at some
point in time, to nominate candidates for all elective offices
voted on within a state) but insufficiently developed at the
present time to nominate a minimally viable presidential candidate
would seem consonant with the statute's purpose. 
 If, on the other hand, plaintiff's lack of a national
organization (and concomitant decision not to nominate presidential
candidates) stemmed from a philosophical commitment to devote
itself solely to issues with direct bearing on Maine or to nominate
only candidates who could be elected to office by the Maine
electorate, matters might be different. Forcing such a party to
field a presidential candidate might well be regarded as a direct
infringement of the party's core protected activity an
infringement that is, under relevant precedent, to be skeptically
scrutinized. See Eu, 489 U.S. at 230 (treating as core protected
activity political party's "discretion in how to organize itself,
conduct its affairs, and select its leaders"); Tashjian, 479 U.S.
at 224 (Constitution protects a party's "determination . . . of the
structure which best allows it to pursue its political goals"). 
 We come, then, to our fundamental problem: the argument
plaintiff presses on appeal was not timely asserted in the district
court, see Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir.
1998) ("The district court is under no obligation to discover or
articulate new legal theories for a party challenging a report and
recommendation issued by a magistrate judge."); Paterson-Leitch
Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985,
990 (1st Cir. 1988) (similar); Borden v. Secretary of Health & Human
Servs., 836 F.2d 4, 6 (1st Cir. 1987) ("Appellant was entitled to
a de novo review by the district court of the [magistrate judge's]
recommendations to which he objected, however he was not entitled
to a de novo review of an argument never raised.") (citation
omitted), yet the argument made to the magistrate judge is not
here renewed, at least not in a developed fashion. 

 Under the circumstances, we think the prudent course is
to affirm the judgment of the district court without passing on the
merits of plaintiff's appellate argument. Although the district
court's boilerplate affirmance of the magistrate judge's report and
recommendation does not explicitly indicate that it rejected
plaintiff's "new" argument on grounds of waiver (as it would have
been within its rights to do, see Santiago, 138 F.3d at 4;
Paterson-Leitch, 840 F.2d at 990-91; Borden, 836 F.2d at 6), we
think it doubtful that the court gave the argument plenary
consideration, given its silence on the matter and plaintiff's
utter lack of explanation for (indeed, acknowledgment of) not
having advanced the argument earlier. Moreover, we have
considerable doubt as to whether the summary judgment record even
supports plaintiff's new position; despite a number of affidavits
which stated that plaintiff was formed to participate in state and
local political activities, plaintiff also filed an affidavit
making clear that, during the 1996-97 time frame, a number of
plaintiff's founding members were taking steps towards forming a
national Green party. See Declaration of Nancy Allen at 8-9. 
We thus believe that a remand for purposes of clarification would
be an exercise in empty formalism.
 Moreover, a number of the minimalist principles
underlying our waiver rules support avoidance of a merits ruling in
this case. See Cass R. Sunstein, The Supreme Court, 1995 Term 
Foreword: Leaving Things Undecided, 110 Harv. L. Rev. 4, 6-8
(1996) (summarizing the jurisprudential underpinnings of the
presumption towards decisional minimalism) (hereafter "Sunstein"). 
Our resolution not only avoids an unnecessary constitutional
decision, see, e.g., Three Affiliated Tribes v. Wold Eng'g, P.C.,
467 U.S. 138, 157 (1984), but it leaves undecided the
constitutionality of an application of a state statute in
circumstances that may well be beyond the statute's contemplation
and where we are not even certain that the State would apply it. 
With respect to whether these circumstances are within the
statute's contemplation, we note that the statute appears to
proceed from the assumption that political parties will wish to
nominate presidential candidates; we have before us no evidence of
a legislative intent to keep off the ballot well-supported parties
that are philosophically opposed to participating in presidential
politics. Cf. Sunstein, 110 Harv. L. Rev. at 7 (noting a
presumption against deciding and implementing a statute's
hypothetical purposes). And with respect to whether the State
would even apply the statute to a solely local party, we note an
absence of evidence that plaintiff ever informed the State prior to
its objection to the report and recommendation that it was
committed to being a solely local party, or that its local
character implied a commitment to abstain from nominating
presidential candidates. Cf. id. (courts should strive to avoid
rulings in areas not "ripe" for decision or where their decisions
may well be advisory in fact). 
 In addition, our resolution avoids a merits ruling where
there has been no real adverse argumentation of the point in
question. Cf. Church of the Lukumi Babalu Aye, Inc. v. City of
Hialeah, 508 U.S. 520, 572 (1993) (Souter, J., concurring in part
and concurring in the judgment) ("Sound judicial decisionmaking
requires 'both a vigorous prosecution and a vigorous defense' of
the issues in dispute . . . and a constitutional rule announced suasponte is entitled to less deference than one addressed on full
briefing and argument.") (citation omitted). And it does so where
the costs of an erroneous ruling (a strong possibility given the
lack of adverse argumentation and relevant record development)
could be very high for states and for developing political parties. 
See Sunstein, 110 Harv. L. Rev. at 18-19. 
 Before concluding, we respond to one other point made in
Judge Campbell's opinion concurring in the judgment. Although we
already have explained our disagreement with Judge Campbell that
the argument made in the summary judgment papers and the argument
made on appeal are essentially the same, and/or that the argument
made on appeal was subsumed within the argument made at summary
judgment, see supra at 6-7, we think it important to emphasize that
this is a qualitatively different situation from one where a claim
made below for example, a claim that a search was unreasonable
under the Fourth Amendment is amplified by appellate counsel
with, for example, novel policy arguments never presented to the
district court. The present situation involves a material shift in
a factual position taken by plaintiff as to why it had no national
organization in 1996; it is tantamount to a plaintiff arguing "I
was fired because my boss didn't like me" below and then arguing "I
was fired because my boss doesn't like elderly workers such as me"
on appeal. We think it clear that our waiver rules ought to
preclude such a shift.
 Affirmed. No costs.

 (Separate opinion follows). 
 

 CAMPBELL, Senior Circuit Judge (concurring in the
judgment). I agree with my colleagues that the judgment below
should be affirmed. I write separately because I disagree with my
colleagues' application of the waiver rule in the circumstances of
this case.
 My colleagues hold that appellant Maine Green Party has 
waived its First Amendment "associational" argument in its entirety
because of a shift in the nature of the argument from the time it
was first presented to the magistrate judge to the time it was
argued to the district court and, now, on appeal. With respect, I
believe this holding is without support in the case law and that it 
represents an unworkably narrow application of the conventional
rule that issues not argued in the nisi prius tribunal may not
subsequently be raised in reviewing courts. 
 It seems to me that the argument now pressed on appeal by
the Green Party that Maine's 5% presidential vote requirement
violated their First Amendment associational right to choose how
they wish to organize was sufficiently presented in the first
instance to the magistrate judge to avoid any question of waiver. 
In its original cross-motion for summary judgment, filed with the
magistrate judge, the Green Party contended that Maine's 5%
presidential vote requirement "infringes upon the plaintiffs'
rights to organize as they see fit." (Emphasis supplied.) The
Party contended that it was organized in Maine around a "serious
candidate for Governor" who gained the support of 33,000 voters for
"ideas and positions concerning issues of importance on the state
level," and that its members "desire to achieve meaningful
participation in state and local politics." In support of this
argument, the Green Party cited the controlling Supreme Court
precedent, to wit, Eu v. San Francisco County Democratic Central
Com., 489 U.S. 214 (1989) and Tashjian v. Republican Party of
Conn., 479 U.S. 208 (1986), and asserted that "[t]o disqualify the
Party because it has no national organization and no serious
candidate for the presidency thus violates the members' rights as
delineated in Eu and Tashjian." 
 On appeal, the Green Party and its members, citing, interalia, Eu and Tashjian, continue to state that they want to be
formed locally, and not on a national level, "either because they
are too new to have a national political organization or because
they choose to remain local." I see no distinction sufficient to
justify application of the waiver rule between the First Amendment
associational argument put to the magistrate judge and the argument
now presented on appeal. 
 My colleagues claim a shift because the 5% presidential
vote criterion (necessitating a strong nationwide presence) was
initially claimed to be unconstitutionally burdensome only because
the Maine party was new, while now it is said to be too burdensome
because it interferes with the Green Party's philosophy favoring a
local, decentralized party. It is not clear to me, however, that
the arguments were ever so neatly compartmentalized; and even if
the original associational argument focused less on philosophy and
more on the practical difficulties of tying party status to the 
showing of a viable presidential candidate, I do not believe the
difference in emphasis renders the present formulation a
significantly different argument. Both versions expressly rest on
the freedom of association guaranteed by the First Amendment. The
Green Party initially claimed, and has continued to claim, that the
Maine ballot access law infringes upon its members' right to
organize as they "see fit." I think it is improper for us to
refuse to consider the Party's current variation simply because its
precursor, which invoked the same constitutional provision and
precedent, emphasized the unfairness of forcing a newly-formed
group to field a presidential candidate capable of attracting
significant Maine support while the later version stresses the
desire of the Green Party to concentrate on candidates for local
offices. Compare Carribean Mushroom Co. v. Government Develop.
Bank, 102 F.3d 1307, 1309-10 (1st Cir. 1996) (variation of argument
amounting to a narrowing of position not a new argument). 
 My colleagues cite to no cases where arguments as closely
intertwined as these have been treated as distinct arguments for
waiver purposes. My experience with constitutional argumentation
is that appellate courts are broadly tolerant of argumentative
shifts so long as the underlying constitutional provision remains
the same and no new facts need be found. Future litigants will not 
dare to replace trial counsel with more sophisticated appellate
counsel if they have to fear that better-honed constitutional 
arguments, based on the same underlying theory, will be deemed
"new" and therefore waived. This is not a case in which, having
sought relief before the magistrate judge under certain
constitutional or statutory provisions, appellant has switched to
different provisions. Nor is this a case where an argument 
depends upon additional factual development in the lower court. 
Nor does this court need to read cases different from those cited
to the magistrate judge in order to address the present argument. 
Nor do I discern any major shift in underlying theory. 
 The waiver concept founders here for other reasons also. 
I do not think that my colleagues can rely upon Paterson-Leitch v.
Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988), and the other
cited cases to establish that the Green Party is precluded from
raising its current version of the association argument. In
Paterson-Leitch, for example, having failed to plead or argue
before the magistrate judge that it was entitled to sue as a third-
party beneficiary of a construction management contract, the
plaintiff attempted to assert third-party beneficiary status for
the first time before the district judge, in its objections to the
magistrate's recommended disposition. The district judge expressly
refused to entertain the argument, finding that it had not been
presented to the magistrate. We affirmed the district court's
refusal. 
 The circumstances here are altogether different. Not
only does the argument here not raise an issue fundamentally
different from that previously argued to the magistrate judge, the
district judge never, for that or any reason, declined to hear the
present argument when made, as it was, by the Green Party. Nor did
the State of Maine argue below or in this court that the Green
Party's argument before the district court should be disregarded
because not previously raised. It is only this court itself which,
for the first time, believes that it has detected a sea-change 
such as to warrant our refusing to decide both the purported new
argument and the original argument put to the magistrate judge. 
 I simply do not see how we can assume that the district
judge refused or failed to consider the "new" argument. For all
that appears, he fully considered it. While the district court
would have been "within its rights" to refuse to consider a "new"
argument, it plainly had the power to do so. The district court,
it is true, adopted the magistrate judge's report; but presumably
it did so because it believed the magistrate judge had adequately
addressed the associational argument. This may or may not have
been so that matter would be fair game for our appellate review
 but I don't see how we can read into the court's silence a
refusal to decide all the arguments put to it, including the ones
we now decide were waived. In the absence of any determination by
the district court that the Green Party's argument was new and
impermissible, and in the further absence of any contention to this
effect by the State of Maine either here or below, I see no basis
for our invocation of a waiver ground. 
 In sum, I believe that my colleagues have misapplied the
waiver rule. The arguments before us are similar to those we
regularly decide, requiring only research and analysis. I think
that we should address on the merits all the arguments raised. 
 I would add that if my colleagues are dissatisfied with
the State of Maine's failure to answer all aspects of the Green
Party's contentions on appeal, they could readily direct the State
of Maine to brief further any of the points not sufficiently
covered in Maine's brief.
 While writing separately, I do not dissent from the
court's affirmance of the judgment below. As the Supreme Court
recently confirmed, the states have broad power to "enact
reasonable regulations of parties, elections, and ballots to reduce
election- and campaign-related disorder." Timmons v. Twin Cities
Area New Party, 117 S. Ct. 1364, 1369 (1997). See also Tashjian,
479 U.S. at 217 (Constitution grants states "broad power to
prescribe the 'Time, Places and Manner of holding Elections for
Senators and Representatives,' Art. I. 4, which power is matched
by state control over the election process for state offices"). 
For substantially the reasons set forth in Magistrate Judge Cohen's
well-reasoned report and recommendation, I believe that the Maine
statute falls within this broad grant of authority to the states. 
In my view, the State of Maine, like certain other states which
have taken a similar stance, is entitled to define a political
party for ballot purposes as an organization that has demonstrated
strength in the fielding of a presidential candidate as well as
local candidates. I do not believe that the First Amendment takes
away from the states the authority to adopt such a definition
rooted, as it is, in our long national history in which political
parties typically fit that model. While the 5% presidential vote
requirement, as Magistrate Judge Cohen noted, requires that new
parties like the Green party wage an "uphill battle," the Green
Party remains free "to endorse whom it likes, to ally itself with
others, to nominate candidates for office, and to spread its
message to all who will listen." Timmons, 117 S. Ct. at 1371. 
Additionally, there are alternative means for its candidates to get
on the ballot. In these circumstances, I discern no violation of
the Green Party's associational rights. 
 The Supreme Court has cautioned, "[n]o bright line
separates permissible election-related regulation from
unconstitutional infringements on First Amendment freedoms." 
Timmons, 117 S. Ct. at 1370. In the present matter, it is far from
clear from existing Supreme Court precedent that the Maine law is
unconstitutional. Granting the relief sought by the Green Party
calls for a major jurisprudential leap a leap having major 
implications not only for Maine but for many other states. In such
circumstances, I think that courts of appeals should indulge the
presumption of constitutionality to which state statutes and
constitutional provisions are entitled, leaving to the Supreme
Court, should it so desire, the creation of the innovative
constitutional jurisprudence needed to warrant such a radical
initiative. I accordingly concur in affirming the judgment of the
district court, but on the merits rather than on the waiver ground
put forward by my colleagues.